Costill *v.* Costill.

BELLA F. COSTILL

*v.*

HENRY B. COSTILL.

1. Where a husband and wife separated by mutual agreement that the husband, who was not able to support the wife, should go to a distant place and build up a medical practice, and when he was able to maintain the wife should send for her, and he did not send for her, and, although having opportunity to communicate with him, the wife did not, on her part, terminate the agreement, and it is not shown that the husband was at any time during the separation able to support his wife, whereby the agreement would terminate by its own limitation, the separation is not an obstinate desertion, by the husband, within the meaning of the statute.

2. If a husband does nothing to induce his wife, who has left him, to return, even when she separates from him without sufficient cause, her desertion is not deemed obstinate, and although a wife is not held to the same accountability for failure to seek the return of her husband, reason and justice make it at least her duty, when her husband has been absent from her for several years, pursuant to their express mutual agreement, to plainly signify to him, if it is possible for her to do so, that she withdraws from that agreement, before his absence will become an obstinate desertion.

3. A divorce will not be granted in this state upon the unsupported testimony of the petitioner as to the causes and character of the separation between the husband and wife.

On petition for divorce.

*Mr. John Griffin,* for the petitioner.

Costill v. Costill.

: THE CHANCELLOR.

The petition is filed by a wife against her husband for divorce, on the ground of desertion.

At the time of their marriage, the petitioner lived with her aunt, and her husband resided with his uncle, at Freehold, in this state. They were privately married on the 23d of June, 1883, at the house of a minister at Manasquan, some miles from Freehold. From the minister's house they went directly to Brielle, in the same county, and, after remaining there a few days, returned to Freehold, the petitioner going to her aunt's house and the defendant to his uncle's. The defendant was then a young physician without patients or ability to support a wife, and, in consequence, it was arranged between him and the petitioner that he should go to a place called Rocky Hill and there build up a practice, and that when he was able to support a wife, he should send for the petitioner to come and live with him, and that, in the meantime, their marriage should be kept secret, and the petitioner should be known by her maiden name. In August, 1883, in pursuance of this agreement, the defendant left Freehold and first went to Rocky Hill for a time, and then to New Brunswick, and then to Trenton, where he now resides.

For the first two or three years after he left Freehold, he visited the petitioner occasionally, and when asked by her at these visits if he was yet able to support her, replied in the negative. After he moved to Trenton his visits to the petitioner ceased. A short time before the commencement of this suit, the petitioner heard that the defendant was engaged to marry a young woman in Trenton, and thereupon she wrote to him to visit her. He did so, and, the petitioner says, disavowed such an engagement. Almost immediately after that visit this suit was commenced. The petitioner went from Freehold to Jersey City, and at the latter place was introduced to a lawyer, who is now her counsel, by a mutual friend of herself and her husband. When asked by that lawyer where her husband lived, she professed not to know, but suggested that he would come to Jersey City and be served with process for appearance in the suit if he were written to at New Brunswick. After some hesitation, because of the collusive

Costill *v.* Costill.

appearance of the petitioner's suggestion, the lawyer wrote to the defendant, at New Brunswick, and thereafter the defendant came to Jersey City and was served with process in the office of the petitioner's counsel.   Thus publicity in the divorce proceedings was avoided both at Freehold, where the petitioner resides, and in Trenton, where the defendant lives and is well known.   Thereafter the suit proceeded *ex parte* until the taking of testimony was concluded and the case was ready for presentation to the court, when the petitioner, without the knowledge or intervention of her counsel, made demand for money upon the defendant and succeeded in procuring him to deposit $500 with the friend who had introduced her to her lawyer, upon the agreement that the money was to be delivered to her when the divorce should be obtained, or returned to the husband if, for any reason, the divorce was not had.

The petitioner has always kept the fact of her marriage to the defendant a secret and has passed and been known, by her maiden name, as a single woman.

The proofs satisfy me that the petitioner always knew the defendant's address and whereabouts, and was in position to demand that he should receive and maintain her as his wife, and that while, perhaps, at times, she doubted his assertions that he was not yet able to support her, and expressed that doubt to him, she, nevertheless, did not tell him that their agreement to live separate should not continue, or demand her right to recognition and maintenance as his wife.   Besides, there is no proof that he ever became able to support her as his wife, and that in consequence thereof their agreement terminated by its own limitation, and it became his duty to seek her.   Hence, the proofs fail to show that the separation was an obstinate one upon the part either of the husband or the wife.   The law requires not only that the separation shall be for a designated time, but also that it shall be with an-intent, upon the part of the defendant, to desert the complainant against her will.   In other words, the person deserted must not be a consenting party.   *Jennings* v. *Jennings, 2 Beas. 38; Mores* v. *Mores, 1 C. E. Gr. 275; Meldowney* v. *Meldowney, 12 C. E. Gr. 328; Taylor* v. *Taylor, 1 Stew. Eq.*

---

Costill *v.* Costill.

---

*207; Johnson* v. *Johnson, 8 Stew. Eq. 20; Newing* v. *Newing,
18 Stew. Eq. 498.*

If a husband does nothing to induce his wife to return to him,
even when she separates from him without sufficient cause, her
desertion will not be deemed obstinate. *Cornish* v. *Cornish, 8
C. E. Gr. 208; Bowlby* v. *Bowlby, 10 C. E. Gr. 406; S. C. on
appeal, 10 C. E. Gr. 570; Trall* v. *Trall, 5 Stew. Eq. 231;
Newing* v. *Newing, supra;* and although a wife is not held to
the same accountability for failure to seek the return of her hus-
band (*Sargent* v. *Sargent, 9 Stew. Eq. 644*), reason and justice
make it at least her duty, when her husband has been absent
from her for years, pursuant to their express mutual agreement,
to plainly signify to him, when it is possible for her to do so,
that she withdraws from that agreement, before his absence will
become an obstinate desertion. *Hankinson* v. *Hankinson, 6
Stew. Eq. 66, 70.*

That the petitioner in the case before me had power to com-
municate her dissent to the continuance of the agreement for
separation, most clearly appears from the fact that when she
heard that her husband was engaged to marry another she had
no difficulty in calling him to her. The complainant does not
say that, at the interview upon that occasion, she sought to ter-
minate the agreement of separation made with the defendant, nor
does she intimate that she even sought recognition as his wife.
On the contrary, the subsequent actions of both the complainant
and the defendant most plainly betray that they then agreed that
the secrecy which they had always maintained should continue,
and that they would sever their bonds of marriage in as clandes-
tine a manner as they had entered upon them. Her employment
of counsel in Jersey City, concealing from him the fact that she
had just had an interview with her husband ; posing before him
and the special master who took the *ex parte* proofs, as a woman
who has not seen her husband for four years ; pretending to her
counsel that she did not know where her husband could be
found ; suggesting that he should be written to at a place more
than twenty miles from his residence, to come to a place many
miles from either his or her residence to be served with process,

CASES IN CHANCERY. [47 Eq.

together with the husband's prompt and voluntary appearance at the office of hostile counsel for the purpose of submitting to such service, and his subsequent failure to defend this suit, makes the existence of such an agreement most conspicuous, and, if there be doubt as to its character and terms, that doubt is set at rest by the additional circumstance that, after the testimony before the special master had been taken, and when the case was ripe for final hearing, without the knowledge of counsel, the petitioner demanded money from the defendant, and secured $500 to be placed in the hands of a mutual friend, to be paid to her when and if the divorce should be obtained. It is claimed that this money was deposited in compromise of alimony, but the condition that it was not to be paid unless the divorce could be had, and the fact that negotiations concerning it were concealed from petitioner's counsel, exhibit the shallowness of such a pretence.

. . I am satisfied not only that the petitioner has failed to make out a case of obstinate desertion, but that her suit is the outcome of a collusive agreement by which a separation, always acquiesced in, was to be magnified into a willful, continued and obstinate desertion. The only proof of the causes and character of the separation in this case is found in the testimony of the petitioner, and from that, as I have shown, it is readily perceived that the separation was not an obstinate desertion. But, if it were otherwise, the rule endorsed by the court of errors and appeals in *McShane* v. *McShane, 18 Stew. Eq. 341*, that a divorce will not be granted in this state upon the unsupported testimony of the petitioner as to the causes of separation, would here apply. The intended imposition upon the court in this case, emphasizes the wisdom of this rule. Where the defendant, collusively or otherwise, remains silent, it would not be difficult for an interested and unscrupulous petitioner to make a lawful separation appear to be a willful and obstinate desertion, if this rule did not prevail.

The petition will be dismissed.