## FISHER *v.* FILBERT.

A bond given by a husband to a trustee, for the use of his wife, confers upon the wife a distinct interest in the chose in action, and is not invalid as against the husband, who will be taken to have intended a trust for the separate use of his wife.

A power of appointment of the sum secured by such bond, being upon the face of it conferred upon the wife by the husband, without more, constitutes her *quasi* a feme sole in regard to it, and the husband cannot destroy the power thus created, by executing it himself.

If at the time the bond was given, it was understood and agreed, that the bond should only be collected, in case the behaviour of the husband, the obligor, towards his wife, *should be so bad* that she could not live with him: upon that contingency happening, it was not a fraud upon the understanding of the parties to the bond, to set it up as absolute.

An omission to instruct the jury upon all the lines assumed, is not such an error as to affect the judgment: unless the opinion of the court below has been specifically called for.

ERROR to the Common Pleas of Berks.

This was an action of debt, brought by Peter Filbert to the use of Sarah Fisher against John Fisher, on the following bond:

"Know all men by these presents, that I, John Fisher, of Longswamp township, Berks county, and state of Pennsylvania, am held and firmly bound unto Peter Filbert, trustee of Sarah, wife of the said John Fisher, in the sum of one thousand dollars, lawful money of the United States, to be paid to the said Peter Filbert, for the use of the said Sarah Fisher, or to whomsoever the said Sarah shall appoint, (the said John, her husband, giving her power thereto,) to which payment, well and truly to be made, I bind myself, my heirs, executors and administrators, and every of them, firmly by these presents. Sealed with my seal, dated this fifth day of November, A. D. 1844.

"Whereas the above-named Sarah Fisher has instituted a prosecution, on account of ill treatment, against the said John Fisher, her husband, and Elizabeth, his daughter, which it is hereby intended to settle, and to bring about peace and harmony in the family:

"Now the condition of this bond is, that if the above bounden John Fisher, his heirs, executors and administrators, shall well and truly pay or cause to be paid to the said Peter Filbert for the use of the said Sarah, as above stated, the just and full sum of Five Hundred Dollars, on demand, with lawful interest from the day of demand, without fraud or further delay, then this obligation to be void, else to remain in full force and virtue."

JOHANNES FISCHER, [L. S.]

Witness at signing: CHAS. WEIRMAN.

F

The circumstances under which this bond was given, seem to have been these : The defendant and his wife lived unhappily together, and in the fall of 1844 she separated herself from him, at the same time instituting a prosecution against him for assault and battery, upon which he was bound over to answer at the next Court of Quarter Sessions. At the time of holding the court, both parties repaired to Reading, where, after some negotiation between them, it was agreed that the prosecution should be settled; that they should live together again, and that a bond for the payment of five hundred dollars should be given by the defendant to Mr. Filbert, for the use of the wife. In pursuance of that agreement, the bond in controversy was executed by John Fisher. Mrs. Fisher, after thus settling the prosecution, returned to her husband's house and society, and remained with him until about the 19th of March, 1845, when, as she alleged, she was again compelled to leave him. Soon after this second separation, suit was brought on the bond.

The defendant below pleaded payment with leave, &c., and gave the following notice of special matter :

" You are hereby notified that under the plea of payment with leave, &c., the defendant on the trial of the above-mentioned cause will offer evidence to show that the bond on which suit is brought was given wholly without consideration, and that the defendant has never received any thing therefor ; that at the time when the bond was given, it was stated and agreed by the obligee, and it was so understood, that the bond was given to secure the good behaviour of the defendant towards his wife, and was only to be enforced in the event that the behaviour of the said defendant towards his wife should thereafter be so bad that she could not live with him ; that the conduct of defendant since that time has been good and exemplary towards his wife, and has given her no occasion of offence, but that the demeanour of the said wife towards the defendant has been exceedingly offensive and vexatious ; that she constantly applied to him opprobrious epithets, before his and her children ; refused to perform the duties of a wife, and rendered the life of the defendant insupportable ; and although treated with great kindness, left the defendant's house without leave or reason, saying that unless she left she could not get the money secured by this bond.

" That at the time when the bond was given, the plaintiff, who is an attorney, stated to the defendant, an illiterate man who cannot understand English, that the bond was to secure the good behaviour of the defendant towards his wife, and only to be enforced in the

event that the behaviour of said defendant towards his wife should be such thereafter, that she could not live with him; that the said representations were fraudulently made; and that, relying upon such representations, defendant signed the said bond, written by the plaintiff, and the contents of which were unknown to the defendant; that the obligee has since made such declarations, and that the attempt to set up the same as an absolute bond is a fraud on the defendant and on the agreement; that the defendant was taken to the office of the plaintiff in the absence of his advisers, and this bond thus obtained from him by the foregoing and other fraudulent representations; and that it was agreed at the time when this bond was executed that the plaintiff should hold the same as trustee, to be collected only on the foregoing conditions."

Upon the trial several witnesses testified as to what took place at or immediately before the signing and sealing. Charles Fisher testified that Mr. Filbert and Mr. Weirman, who were Mrs. Fisher's attorneys, and Mr. Fisher and Mrs. Fisher, made it out among them that the bond should be for good behaviour. Mr. Weirman testified that Mr. Fisher agreed to give a bond on demand for five hundred dollars, and that Mr. Filbert said if they would remain together the money would not have to be paid, of course; but that Fisher would be liable to pay that amount, on demand, on another separation. And again, that Mr. Filbert gave as a reason why this was better for Mrs. Fisher than some previously arranged terms of compromise, that she could demand the payment of the bond at any time on her leaving him a second time, or on a second separation. Mr. Weirman did not recollect that Mr. Filbert said any thing about the bond being for good behaviour, and did not know that any thing was said by any one on that subject. It was testified by Charles Fisher, that the bond, which is written in English, was read in that language, and that it was not explained in German to the obligor, who did not speak, and understood very little, if a word, of English. The bond is in the handwriting of the plaintiff, who was the attorney of, and acted, as such, for Mrs. Fisher, on the occasion when it was given, Mr. Fisher having at the time no legal adviser with him.

Much evidence was given on both sides as to the conduct of Mr. and Mrs. Fisher towards each other, preceding the second separation, which it is unnecessary to detail here.

The defendant below offered to prove that Mrs. Fisher had said to a witness, that she would try to get the money again; that if she failed to get it, she would go back and live with her husband: and

the rejection of this constituted the defendant's first bill of exceptions.

The plaintiff below offered to prove that, shortly before the second separation, Fisher called the witness in to talk about his wife; that he complained of her; said he could not do so; that he would make another vendue, and sell out every thing, and give up; that he said nothing about where his wife was to go to: and the admission of this, and of other evidence to the same effect, constituted the defendant's second bill of exceptions.

The plaintiff below then offered in evidence the " Geist der Zeit," a newspaper published in Kutztown, March 20, 1845, containing the following advertisement, the publication by John Fisher being admitted:

### " Warning.

" I, the subscriber, living in Longswamp township, Berks county, hereby warn all and every one, it may be whatever person it will, and even if it should be my own wife Sarah, without my express order therefor, to purchase on credit any thing upon my name, since I will pay no debt contracted in such a manner.

" March 20."                                             JOHN FISHER.

And the admission of this constituted the defendant's third bill of exceptions.

The evidence being closed on both sides, the defendant propounded the following points, and requested the court to charge:

" 1. If this is an absolute bond, as the plaintiff contends, it is void; because the money when collected would belong to the husband; and therefore it would be the same hand to pay and to receive, it not being for the separate use of the wife, and there having been no previous arrangement to live separate and apart.

" 2. If the bond was only to be paid (as Charles Weirman says) when Mrs. Fisher left her husband, it is void, being against the policy of the law; being an encouragement to the wife to leave her husband.

" 3. If the jury believe that, at the time the bond was given, it was understood and agreed that the bond should only be collected, if the behaviour of defendant towards his wife should be so bad that his wife could not live with him, the attempt to set it up as an absolute bond is a fraud, and the plaintiff cannot recover."

To these points the court below (JONES, P. J.) answered as follows:

" If this bond was executed as an absolute bond by the defend-

ant, it is not void, for the reasons mentioned by the defendant in his first point. Though generally, a husband may not create a trust for his wife without expressing it to be for her separate use; yet when he does create such a trust, the circumstances under which it was created, and the intention, may be called in to aid and support the trust. If there were no circumstances and intention in this case, from which it might be inferred that this bond, though absolute on its face, was in fact for the wife's separate use, it would be true that the money, when collected, would belong to the husband.

" If the bond was only to be paid when Mrs. Fisher left her husband, it would be void, as being against the policy of the law in offering an encouragement to her to leave him. Whether Mr. Weirman said it was to be paid only when she left him, is, however, for the jury to determine; and in considering what that witness did say, you will take his whole evidence into view; unless you are satisfied that it was only to be paid on that contingency, it is not void.

"The third point of the defendant we answer in the negative."

Verdict and judgment for the plaintiff; whereupon the defendant sued out a writ of error, and in this court made the following assignment of errors:

1. The court erred in charging the jury, that the bond was not void for the reasons mentioned in the defendant's first point, and in all their answer to the defendant's first point.

2. The court erred in their answer to the defendant's second point.

3. The court erred in answering the third point in the negative.

4. The court erred in putting the case to the jury solely on the ground of fraud at the *execution* of the bond.

5. The court erred in rejecting the evidence mentioned in the first bill of exceptions.

6. The court erred in admitting the evidence mentioned in the second bill of exceptions.

7. The court erred in admitting the evidence mentioned in the third bill of exceptions.

8. The court erred in charging the jury that if the bond was not tainted with fraud, there could be a recovery upon it.

*N. D. Strong*, for plaintiff in error.

*Smith*, contrà.—This bond, on its face, explains the object for which it was given, which was to secure peace and harmony in the family; Barton *v.* Wells, 5 Whart. 225; Leis *v.* Stub, 6 Watts,

48; Jourdan *v.* Jourdan, 9 Serg. & Rawle, 276; Frank *v.* Frank, 1 Cas. in Chan. 84; Reeves' Domestic Relations.

*W. Strong*, in conclusion.

*May* 24. BELL, J.—The first error assigned impeaches the bond, the subject of this suit, as utterly invalid against the husband, because, as it is thought, the money due under it, when collected, would belong to him. But this depends on the question, whether, in equity, the effect of the instrument is to confer a separate interest on the wife. It is now too firmly settled, by numerous authorities, to admit of question, that a wife may acquire a separate property by agreement with the husband, either with or without the intervention of trustees; McKennan *v.* Phillips, 6 Whart. 571, 2 Story's Eq. § 1380. And I think it is beyond doubt, that this may be by bond, conditioned either for the payment of a sum in gross or an annuity to the wife, which will be enforced, in equity at least, as an agreement; Cannel *v.* Buckle, 2 P. Wms. 243; Watkyns *v.* Watkyns, 2 Atk. 61; Blaker *v.* Cooper, 7 Serg. & Rawle, 500. In such case, apart from any question of fraud, the only concern of a court of equity would be to discover whether the donor intended a trust for the separate use of the wife, and that fact being once clearly established, the husband himself will be turned into a trustee for her, rather than that the trust should fail; Clancy on Married Women, 260. Where the gift or agreement is made in view of immediate separation, the interest created will always be treated as vesting a separate dominion in the wife, for the circumstances show that such must have been the intention of the parties, by a necessary implication. Such a conclusion is also frequently established; though the marital relation be never disturbed, and there is no express stipulation that the thing given, or agreed to be given, shall be the separate property of the *feme.* Examples of this are furnished by Slanning *v.* Style, 3 P. Wms. 337, Calmady *v.* Calmady there cited; Mangey *v.* Hungerford, 2 Eq. Ca. Abr. 156, and particularly Lucas *v.* Lucas, 1 Atk. 270, where a husband transferred £1000 South Sea annuities into the name of his wife. This was considered so decisive an act as to amount to an agreement by the husband, that the property should become hers. And as in the absence of any intervening rights of creditors, it seems to be agreed the intention of the husband is to determine the nature of the gift or agreement, it is not easy to see how a bond given by him to a trustee for the use of the wife, can be regarded in any other light than as giving her a distinct interest

in the *chose in action;* for it is impossible to account for such a step on the part of the husband, except upon the hypothesis of such an intent. This indeed would seem to be the inevitable implication, though the machinery of a trustee be not employed, the only difficulty presenting itself, regarding the remedy for its enforcement where there is no distinct tribunal existing as a court of Chancery. But where the instrument is executed between the husband and a third party, as here, this formal obstacle vanishes, and I know of no instance in which, on the ground of coverture alone, the marital dominion of the husband over the interest so created has been held to continue. But at present it is unnecessary to continue this train of reflection further, for, considered in itself, the obligation under consideration bears upon its face indubitable evidence that the sum of money, of which it secures the payment, is to be subject to the control of the wife alone. This is to be found in the clause giving the absolute power of appointment of the sum secured, which, without more, would constitute her *quasi* a *feme sole* in regard to it. It is said a power of appointment given to a *feme covert* may be executed by the husband, unless he be expressly excluded; but such can never be the case where a husband, as against himself, confers a power on his wife, for this would be manifestly contrary to the object in view, by enabling him to destroy the power at the first moment of its existence.

We have thus far considered the bond executed by the plaintiff in error, within its four corners, and without any reference to extraneous facts; but if we adopt the defence taken below, that it was in truth given as a security for the future good behaviour of the obligor towards his wife, and to be used as absolute only in the event of his breaking this condition, any lingering doubt which by possibility might remain as to the character of the interest intended to be vested in the wife, on the happening of the contingency guarded against, is put to flight. In that event, the arrangement looked to the separation of the parties, brought about by the misconduct of the husband; and this places the case in the class of cases for a separate maintenance, which are of course independent of the power of the husband. The question of the propriety of enforcing such agreement, for the protection, support, and relief of married women, by insisting upon the covenant of the husband to pay, though formerly much agitated, seems now at rest; and, indeed, as is remarked by Mr. Justice Story in his Commentaries on equity jurisprudence, vol. 2, § 1429, when speaking of the general exercise of jurisdiction in regard to those under coverture, "it is

difficult to resist the impression, that the interposition of courts of equity is founded in wisdom, in sound morals, and in a delicate adaptation to the exigencies of a polished and advancing state of society."

In the case at bar, the jury having found upon parol evidence, admitted to show what the defendant below alleged to be the true character of the bond, and thus to control its otherwise absolute character, that the final separation of the husband and wife was brought about by the misconduct of the husband, the effect was to withdraw the contingency which might else have attached upon the instrument during the whole course of coverture, and thus restore to full activity the *prima facie* absolute undertaking of the husband to pay. It cannot therefore be said that the attempt to enforce it by suit, as an absolute bond, was a fraud upon the understanding of the parties to it; for that very agreement contemplated the event which the plaintiff below averred, and it seems proved, had actually taken place, as conferring an unrestricted title to the money sued for. It follows from what has been said, there is no soundness in the first and third suggestions of error, depending upon supposed mistakes in the answer of the court to the first and third points submitted. But the plaintiff in error complains that the court withdrew from the consideration of the jury so much of his defence as rested in the disputed question of fact, whether the separation was caused by the fault of the husband or of the wife, by putting the case solely on the ground of fraud at the *execution* of the bond. Judging from his notice of special matter and the evidence given under it, he relied principally upon two grounds to defeat the action, so far as controverted facts were involved. These were, *first*, and mainly, that he was induced to execute the bond by a false and fraudulent representation of its character, made to him at the time of its execution; and *second*, that it was given only to be effective in a certain contingency to spring from his misbehaviour, which had not occurred. Of the latter of these defences, it is admitted he had the full advantage before the jury. If the court below, in charging the jury, did not make it a prominent topic of remark, we can very well understand how it occurred, from the manner in which the defendant specifically called the attention of the court to the points of his defence. Each of the three propositions submitted by him, and on which he asked the jury to be instructed, proceeded upon the supposed invalidity of the bond; for though the last glanced at the subject of the misbehaviour of the husband, it is only introductory to the broad proposition that the

attempt to set it up as an absolute bond was a fraud. The mind of the presiding judge was thus directed to the subject of the supposed fraud, legal and moral, and to this alone; and upon these points his answer leaves nothing to be desired. To reverse the judgment because he confined himself principally to these, would be in violation of the well-established rule, that an omission to instruct the jury upon all the lines of defence assumed, is not such an error as will affect the judgment, unless his opinions have been specifically called for. If, indeed, the course of the judge had been such as to exclude from the consideration of the jury a material ground of objection to the plaintiff's recovery, a different case might have been presented. But we see no evidence of this. On the contrary, we are satisfied from the paper book, the defendant below was permitted to go to the jury upon every disputed matter of fact, fully and without any improper hinderance, and therefore, on this score, he has nothing to complain of.

The court affirmed the second point submitted by the defendant. It is not therefore perceived on that ground, he can assign error in this part of the charge.

The bills of exception taken to the ruling of the court upon the questions of evidence may be disposed of in very few words. The rejected declaration of the wife, referred to in the first bill, appears to us to have been entirely irrelevant to the issue trying. It was made after the separation, and, at the time it was offered, tended in no degree to controvert any thing which the plaintiff had made a part of his case, or to establish the defendant's allegation of misbehaviour in the wife. We cannot see how, at that stage of the cause, it could have shed any light upon the matter in litigation. The failure to recover the money might have induced the wife to cast herself upon her husband for support, despite his ill treatment, but it is not perceived how it went to show misconduct in her.

The evidence referred to in the second and third bills was properly received for what it was worth, as a portion of the general bearing of the husband, and the temper and disposition he entertained towards his wife. It might not have been of much weight with the jury, but we cannot say it ought to have had no influence upon their deliberations. On the whole case, we see no error in this record.

Judgment affirmed.