Estate of Samuel Frank, Deceased.    Appeal of Mary E.
Frank.

*Husband and wife—Agreement to separation.*

Where a wife suggests a separation to her husband, and after consultation with her brother-in-law, and after she has actually separated from her husband, dictates the terms of a formal article of separation under which she receives $1,000, and no fraud, coercion or concealment is shown on the part of the husband, and as far as the testimony discloses the wife knew as well as the husband what property he had at the time of the separation, she will not be permitted, on the death of her husband, twenty-six years after the date of separation, to claim any portion of an estate of $60,000, of which the husband died possessed, but as to which there was no evidence of his possession at the date of the separation.

Argued March 27, 1899.   Reargued Jan. 2, 1900.   Appeal,
No. 80, Jan. T., 1899, by Mary E. Frank, from decree of O. C.
Phila. Co., July T., 1898, No. 209, dismissing exceptions to adjudication.   Before GREEN, C. J., McCOLLUM, MITCHELL,
DEAN, FELL, BROWN and MESTREZAT, JJ.   On reargument.
Affirmed.

Exceptions to adjudication.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Preston K. Erdman* and *Frank Frederick Brightly*, for appellant.—A deed of separation is a contract between parties in a relation of confidence to each other, and will not avail as a defense to the claim of a widow for her share in the estate of her husband, unless it is fair and reasonable, and was procured without fraud, or coercion; and the burden is upon those interposing it, to prove, affirmatively, these requisites: Ireland v. Ireland, 43 N. J. Eq. 311; Miller v. Miller, 16 Ohio, 528; Randall v. Randall, 37 Mich. 571; Walker v. Walker, 9 Wallace, 751; Hungerford v. Hungerford, 16 App. N. Y. Superior Ct. 612; Speck v. Dansman, 7 Mo. App. 165; Hamilton v. Hamilton, 89 Ill. 349; Scott's Est., 147 Pa. 110; Hutton v. Duey, 3 Pa. 100; Dillinger's App., 35 Pa. 362; Com. v. Rich-

ards, 131 Pa. 212; Greenfield's Est., 14 Pa. 489; Wistar's App., 54 Pa. 60; DeCamp v. Johnson, 3 Luz. Leg. Obs. 38; Spencer's App., 80 Pa. 317; Diller v. Brubaker, 52 Pa. 498; Unruh v. Lukens, 166 Pa. 324; Miller v. Rivers, 138 Pa. 270; Armor's Est., 154 Pa. 517.

The relation of husband and wife is a confidential relation to which this principle applies: Darlington's App., 86 Pa. 512; Shea's App., 121 Pa. 302; Odenwelder's Est., 1 Pa. Superior Ct. 345.

Where the confidential relation is shown, the burden of proof of bona fides is upon the grantee: Huffman v. Iams, 11 Atl. Rep. 444; Acker v. Lambert, 4 Montg. 189; Crothers v. Crothers, 149 Pa. 201; Browning v. Patterson, 11 Montg. 78; Clark v. Clark, 38 W. N. C. 57; Smith v. Loafman, 145 Pa. 628.

*Charles E. Pancoast* and *J. B. Townsend, Jr.*, with them *Albert B. Weimer*, for appellees.—An agreement between husband and wife to live separate and apart, if based on a good consideration, and reasonable in its terms, and actually carried into effect by both parties, will be valid and binding upon the wife as upon the husband: Dillinger's App., 35 Pa. 357; Hitner's App., 54 Pa. 110; Speidel's App., 107 Pa. 18; Scott's App., 147 Pa. 102; Com. v. Richards, 131 Pa. 209; Agnew's App., 22 W. N. C. 129.

The whole subject has been reviewed at great length in Daniels v. Benedict et al., 97 Fed. Rep. 367, referred to especially for its reference to the decision of this state.

Another complete answer to the appellant's argument is furnished by the fact found that in this case no confidential relation in fact existed: Com. v. Richards, 131 Pa. 209.

OPINION BY MR. JUSTICE MESTREZAT, February 26, 1900:

This is an appeal by Mary E. Frank from the decree of the orphans' court of Philadelphia county, refusing to award to her as widow her share of the personal estate of her deceased husband, Samuel Frank, and distributing the same under the provisions of his last will and testament.

Samuel Frank and the appellant were married on November 9, 1863. They immediately took up their residence at No. 1426 North Twelfth street in the city of Philadelphia, and

he continued to reside there until his death.   They never had any children.   Not long after their marriage, differences arose between them, and as the years went by, these differences became greater and the breach grew wider.   This estrangement finally culminated in Mrs. Frank addressing her husband the following note:

"April 21, 1871.

" F.   I have firmly made up my mind to a separation.   I am tired of married life.   If you will give me money enough to begin business I will leave you; you may get a divorce.   We need not expose each other to the law, or to the world, if you will act right.   You can settle it as quickly as possible, the sooner the better.   I am agreed to sign a paper as soon as you are ready.   There need be no ill feeling or quarreling, for we are not suitable to each other in anything and we may both mend our lives by being apart.

" MARY."

In furtherance of the object of this letter and in order to speed an absolute separation of the parties, the following paper was signed by the parties whose names appear thereto, and was delivered to Mr. Frank:

" Phila., April 24, 1871.   I hereby agree to a divorce if you will pay me one thousand dollars, and to take the following articles with me: my clothing, jewelry, 8 vases, 1 card basket, 11 glasses, 1 table, 1 work-basket, album, 2 bronze figures, 3 boxes, bed, 2 photographs, 4 pictures, 2 pillows, 1 bolster.

" MARY E. FRANK.

" Witness:
  " W. LANGHEIM.
" Approved,
  " JOHN V. C. CLARKE, Trustee."

Mrs. Alice Clarke is Mrs. Frank's sister and the wife of John V. C. Clarke, who approved this paper as trustee.   He was present when the paper was signed and heard it read. Mrs. Clarke testified that, after the paper was signed, it was taken by Mr. Frank to "be placed in legal form."   He procured the services of Nathan H. Sharpless, Esq., who in conformity with the terms of the above paper of April 24, 1871,

drew a formal deed of separation between the husband and wife, with John V. C. Clarke, the brother-in-law of Mrs. Frank, as trustee. This deed was executed by the parties on April 27, 1871, at the office of Alderman Allison, who certifies that he examined Mrs. Frank separate and apart from her husband, and that, after the full contents of the deed had been made known to her, she declared that she executed the same voluntarily and of her own free will and accord. A few days prior to the execution of the deed, Mr. Frank and his wife separated, and she went to the home of her mother at 926 North Twelfth street, where also Mr. and Mrs. Clarke resided. On the day the parties executed the deed, Mr. Clarke procured a carriage and, with Mrs. Frank, drove from their home to the residence of Mr. Frank, who joined them there, and the three parties proceeded to the office of the alderman, where the deed was duly signed and acknowledged. This deed recited the irreconcilable differences, the lack of domestic confidence and reciprocal affections between the parties, and provided for their immediate separation, for the payment to the wife of $1,000, and the delivery to her of the articles named in the paper of April 24, also for the relinquishment of all claims to her service and to any property she possessed or might acquire thereafter, and permitted her to carry on any business or trade she might desire as if she were a feme sole. On the part of Mrs. Frank and her trustee, it was stipulated that she would not, at any time, claim a right to " any jointure, dower or thirds into or out of the estate, real, personal or mixed," of her husband, and that he might convey his property " clear of her claim of dower, thirds or rights or supposed rights," by reason of her being his wife or widow, and that she would not demand alimony, or contract any debts for which he should be liable. She renounced any and all rights she had or might have in the estate of her husband as wife or widow. So far as the evidence discloses the parties thereafter never resumed their marital relations, but continued to live apart in pursuance of the terms of this deed.

After the execution of the deed of separation, Mrs. Frank continued to reside at 926 North Twelfth street, where she, with the $1,000 paid her by her husband, established herself in the millinery business. By this means she has since supported herself, and has carried on the business without any interference on the part of her husband.

At the time of the execution of the deed, Samuel Frank owned the premises where he resided, and was a partner in the firm of J. and S. Frank, which was engaged in the jewelry business in the city of Philadelphia. At that time these facts were fully known to Mrs. Frank, and, so far as appears by the evidence, this is all the property he had. Shortly after the separation of Frank and his wife his firm was robbed and went out of business. Mr. Frank was not engaged in other business during his life.

The decedent died on July 18, 1897, leaving a widow, the appellant, but no child or issue. He died testate and by his will, dated December 21, 1892, with codicil dated April 9, 1897, he bequeathed $300 to Hope C. Mathias, daughter of his former housekeeper; all cash uninvested at the time of his death, his collection of coins, specific articles of furniture and so forth, and an annuity of $360 per annum for life to his niece, Ella P. Kelly, free of tax; $250 in trust for the preservation of his cemetery lot, and the residue to "form and constitute a fund in the hands of the trustees, to be perpetually and forever known as the Samuel Frank legacy fund," to be held by the trustees, and the net income applied to certain charities therein named. He directs that no other person than himself shall be interred in his cemetery lot and that no other persons or legatees than those named shall receive any part of his estate.

Letters testamentary on Frank's estate were duly granted to the Guarantee Trust and Safe Deposit Company of Philadelphia, the executor and trustee named in the will. On October 30, 1897, more than three months after the death of her husband, the attorney of Mrs. Frank notified the executor that she, as widow, elected upon the distribution of testator's estate to take, against the will of her husband, her share of his estate under the intestate laws of the state. In the court below, on the audit of the account of the executor, she claimed the one half of the balance for distribution in the hands of the executor as widow of decedent. Her claim was refused, and said balance was awarded to the legatees named in the will. This appeal is to determine the correctness of the adjudication.

In support of her claim, the learned counsel of the appellant contends that the deed of separation is not binding on his client, for the reason that at the date of its execution the confidential

relations existing between the parties required a free and full disclosure by the husband of all his property, and that such disclosure was not made, but that on the contrary he concealed the true state of affairs as to his financial condition, and that the sum paid the appellant as a consideration for the separation was wholly disproportionate to his estate.  It is maintained by the appellant that the marital relation is one of trust and confidence and that, in contracts of this character, the husband, as the fiduciary, cannot be permitted to derive any advantage over his wife as the beneficiary.  It is further maintained that, to sustain the validity of such contracts, the fiduciary relation imposes upon the husband the burden of showing affirmatively the absence of fraud, coercion or imposition; that the consideration passing to the wife is reasonable, and that, at the time the wife entered into the contract, she was fully advised as to the quantity of her husband's estate and her rights therein.

That such are the rights of the wife and the duty of the husband may be conceded.  Any concealment or fraud on his part in obtaining the deed of separation would undoubtedly avoid it.  He cannot enforce the contract unless there has been the utmost good faith on his part, and his wife has become a party to it, with full knowledge of all the facts necessary to enable her to act intelligently and understandingly.

From a consideration of the facts in this case, it is apparent that Mrs. Frank believed there were irreconcilable differences between herself and husband and that a separation should and must take place.  So far as the testimony discloses, she took the initiative to accomplish the separation, by writing the note of April 21.  The language of this note shows that she was "tired of married life," and intended to compel an absolute separation if it was not accomplished amicably.  She desired and urged immediate action.  Three days after she wrote the note referred to and, after further consideration, she states in writing her terms of separation which are approved by her brother-in-law.  Between the dates of the execution of the two papers she had left her husband, and when the paper of April 24 was signed she was residing with her mother, sister and brother-in-law.  She therefore had the opportunity to, and evidently did, consult and advise with her immediate relatives before she made the proposition contained in the writing of April 24.  It is "ap-

proved by John V. C. Clarke, trustee." At that time Mrs. Frank
knew that her husband was the owner of the premises he occu-
pied as a residence, and that he was a member of the jewelry
firm of J. & S. Frank. It is fair to infer from the circumstances
that her brother-in-law, Mr. Clarke, also knew that fact. There
is nothing in the evidence tending to show that he was then the
owner of any other property. So far as appears, this was all
the estate he had.

But it is urged by the appellant that, as decedent died worth
in personal property over $60,000 in 1897, he concealed from
her his true financial condition in 1871, and did not disclose all
the property he then possessed. This conclusion is not justi-
fied by the premises. It by no means logically follows that be-
cause he died with this amount of personal estate in 1897, that
he had any part of it twenty-six years before, or that he had
not accumulated the whole of it during those years. The rapid-
ity with which money has been accumulated and fortunes have
been made during the last quarter of a century conclusively
demonstrates that there is no basis to this contention of the ap-
pellant.

It is further claimed that, because the decedent's firm suf-
fered a heavy loss by robbery in April, 1871, he was therefore
the owner of a large amount of property at the time of the sep-
aration, more than his wife had knowledge of. But this does
not necessarily follow. While there may be a presumption that
he and his brother had equal interests in the partnership, there
is no evidence that shows what his interest was or what the
financial condition of the firm was at that time. From any-
thing that appears by the testimony, a settlement of its busi-
ness might have disclosed the insolvency of the firm.

The financial condition of the decedent at the time the deed
of separation was executed is not shown by the evidence. As
we have said, he owned his home property and an interest in
the jewelry firm; but whether he was indebted and to what
amount does not appear. There can, therefore, be no warrant
for the assertion that the provision made for the appellant in
the deed of separation was not reasonable and fair, and was dis-
proportionate to his estate.

The allegation of the appellant that the deed was procured
by fraud and coercion is not supported by any evidence in the

case. As we have said, she was the active party in securing the separation. She knew as well as her husband, so far as the testimony discloses, what property he had. She was acting through and under the advice of her brother-in-law. She was an educated, intelligent woman. The terms of the deed of separation were those she dictated, and it may fairly be presumed, after consulting with her brother-in-law. For more than twenty-six years she observed the terms of the contract; and she never intimated that they were unreasonable, unfair, or that the deed had been procured by any illegal means until after the death of her husband. These and other facts not only rebut most strongly even a suspicion of any coercion or fraud, but show affirmatively that the deed was executed at the instance of Mrs. Frank, with full knowledge on her part of her husband's estate, her rights therein, as well as the present and future effect of the deed.

At the time the deed was executed, the parties had separated and were never reunited. The object of the deed was an absolute, actual and immediate separation, as clearly appears by the papers of April 21 and 24, 1871, written by the appellant to her husband.

This case is clearly within the class of cases in which the deed of separation between husband and wife has been enforced. There was no concealment, fraud or coercion on the part of the husband. The testimony discloses that the allowance for the wife was reasonable, and that she was fully cognizant of all the property the evidence shows her husband had when she executed the deed of separation. As we said in another case, she " was in a position in which she could act and did act, not only with perfect freedom, but with knowledge and appreciation of all the circumstances of the situation and of her individual and marital rights."

The law upon this subject is well settled by numerous decisions of this Court. In Hutton v. Duey, 3 Pa. 100, it is said by Mr. Justice ROGERS, delivering the opinion of the Court: " The agreement here contemplates an immediate separation; it was carried into effect in good faith by the husband, has nothing unreasonable in it, and consequently, the wife, after the death of her husband, is not entitled to the aid of the Court in any attempt to violate it." In Dillinger's Appeal, 35 Pa. 362, the Court by Mr. Justice WOODWARD says: " True, she was not

sui juris when the contract was made, but many agreements between husband and wife, for living separate, have been enforced in equity, even where there was no trustee to protect the wife, but here, where there was a trustee, and where the contract was fair and reasonable, and the wife has had the full benefit of it, no court would hesitate a moment to enforce the agreement against her. Mutuality is the very essence of equity. If the contract would have been enforced against the husband for the wife's benefit, it must be against the wife for the protection of the husband's estate. That it would have been enforced against the husband is abundantly shown by the cases cited in argument."

Such contracts are always enforced against both parties. The facts of the case at bar bring it clearly within all our authorities, and it would be most inequitable and unjust to permit the appellant to repudiate her contract, and to participate in the distribution of this estate.

The last assignment of error raises the question of the competency of the appellant as a witness to testify generally or in explanation of the letter of April 21, 1871. This assignment was not pressed on the argument. She was clearly not competent for either purpose.

The decree is affirmed and the appeal is dismissed at the costs of the appellant.