# Christie's Estate.

*Husband and wife—Contract—Postnuptial agreement—Consideration.*
Where a husband by his brutal conduct and intemperate habits has given his wife legal ground to leave him, and to institute proceedings for her support and for the protection of her inchoate rights of dower, and the wife is about to leave, when the husband offers her a note for $1,000 if she will remain and continue the marital relation, and the wife accepts, the note is based on a good consideration, and the wife may collect it from her husband's estate after his death.

Argued Nov. 12, 1907. Appeal, No. 247, Oct. T., 1906, by William C. Whiteside, testamentary guardian of David C. Christie, from decree of O. C. Lancaster Co., April T., 1904, No. 40, dismissing exceptions to adjudication in Estate of William J. Christie, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

SMITH, P. J., filed the following opinion:
A note for $1,000, with interest, held by the widow against the testator was allowed, as was also a claim for the balance of her exemption. These awards are assigned as error and are the subjects of exceptions.

The widow was the testator's second wife and is the mother of his two surviving infant daughters. By a previous marriage he had a son, David C. Christie, to whom, saving $50.00 to each of the little girls, he gave and devised his estate subject to a charge for the use of his widow during life. She elected

to take against the will. The testator was a drunkard, abused his wife and dissipated much of his estate. Her protests failing of good results, she threatened to leave him, and, when arranging to take her departure, he offered her $1,000 that peace and harmony might be established and in consideration that she remain with him and care for his home and family. She accepted the offer. The note was given, and she was faithful unto the end. This was a fair and open postnuptial agreement, entirely free from fraud and concealment, supported by an adequate consideration.

In Fennell's Estate, 207 Pa. 309, Mr. Justice FELL said: "If this agreement had been made in the contemplation of an actual and immediate separation even before the act of 1893, there could be no doubt of its validity: Dillinger's Appeal, 35 Pa. 357; Hitner's Appeal, 54 Pa. 110; Commonwealth v. Richards, 131 Pa. 209; Scott's Estate, 147 Pa. 102. While the common-law disability of a married woman remained, except as modified by statute, her contracts when unobjectionable might be enforced through the medium of equity. Equity for some purposes regarded husband and wife as distinct persons, capable of contracting with each other, notwithstanding their legal unity: Williams's Appeal, 47 Pa. 307. In Burkholder's Appeal, 105 Pa. 31, a postnuptial contract to settle differences between husband and wife which had led to their separation, and the object of which was to adjust their property rights in order that they should thereafter live together in peace and harmony, was upheld on the ground that it was enforceable in equity. That a separation is provided for in an agreement between husband and wife goes to the consideration only and does not affect her power to contract. If there was any doubt before on this subject, it was settled by the act of June 8, 1893, which gives to a married woman the same right and power that any other person has to acquire, possess, control and dispose of any kind of property in possession or expectancy, and to make any contracts that may be necessary, appropriate or advantageous to the exercise and enjoyment of the rights and powers granted, excepting only certain contracts named."

508       CHRISTIE'S ESTATE.

Opinion of Court below—Opinion of the Court. [36 Pa. Superior Ct.

The payment of this note is opposed on the ground that there was no consideration for it, that it was a gift which was revoked by the death of the testator; but what the objection is to the payment of the balance of the widow's exemption we have not been able to learn. It was claimed that $285.50 of the exemption was owing, to which at the time no objection was made, and it was "admitted that the balance of the widow's exemption is in the balance in the account." The award was made accordingly. Exception dismissed.

*Error assigned* was in dismissing exceptions to adjudication.

*B. F. Davis*, for appellant.—There was no consideration for the note: Luken's App., 143 Pa. 386; Merrill v. Peaslee, 146 Mass. 460; 16 N. E. Repr. 271; Vanderbilt v. Schreyer, 91 N. Y. 392; Wimer v. Worth Twp., 104 Pa. 317; Stoutenburg v. Lybrand, 13 Ohio, 228.

*H. Frank Eshleman*, for appellee, cited: Fisher v. Filbert, 6 Pa. 61; Burkholder's App., 105 Pa. 31; Wilen's App., 105 Pa. 121; Board of Foreign Missions v. Smith, 209 Pa. 361.

OPINION BY RICE, P. J., July 15, 1908:

The question involved in this case, and the pertinent facts are clearly and concisely set forth in the opinion of the learned judge below and need not be recited here. The learned judge's findings of fact, particularly the part of them quoted in the second assignment of error, are questioned by the appellant's counsel, who claims that they are not supported by the evidence. While the evidence is not very full yet we are unable to say that it was not sufficient to warrant the judge's findings.

The appellants' counsel asserts the general proposition that when a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity; such promise adds nothing to and takes nothing from the original obligation. He also cites the case of Kesler's Estate, Luken's Appeal, 143 Pa. 386, as showing an application of that prin-

ciple in a manner which makes it a controlling precedent in the present case. Looking at the facts of that case, as they were evidently assumed to be by the Supreme Court, the point decided was that where a wife, having no other cause of complaint against her husband, was dissatisfied with their valid and binding antenuptial contract, and in consequence voluntarily estranged herself from him, his undertaking to revoke the marriage settlement, if she would resume marital relations with him, was not binding, since the agreement amounted to neither a valuable nor a meritorious consideration, it being her legal duty to resume such relation. To show that we have not misapprehended the question arising upon the facts of that case we quote from the opinion of Mr. Justice STERRETT. Speaking of the revocation he said: "The sole inducement was the doing of that which Mrs. Kesler was legally bound to do. She had voluntarily estranged herself from her husband, because of her dissatisfaction with the antenuptial contract; there is no pretense that she had any other cause of complaint. If, as has been shown, that was a valid and binding contract, the estrangement was without justification; it was a wanton abuse of the marital relation for mercenary purposes, and reconcilement was her duty. Public policy forbids that the performance of such duty may be made the subject of barter and sale." Nothing can be clearer than that the learned justice was speaking of a case where the performance of a legal duty was set up as a consideration for a promise. But suppose the husband's conduct has been such as to legally justify the wife in leaving him, and in instituting proceedings to enforce her right to support, and to restrain him from wastefulness due to his intemperate habits, and thus to some extent protect her inchoate right of dower, and other vested pecuniary rights, surely it cannot be said that she does no more than her legal duty if she remains with him, or returns to his household and the labors incident to the care of it by a wife, induced by his written obligation to pay her a sum of money that will be some protection to her. Whatever other objection may be urged against such a contract, we think it cannot be held that the general proposition of law

stated at the outset of this opinion controls this case. The distinction between a promise upon consideration that a wife will continue or resume marital relations with her husband, when in doing so she will be simply doing her duty, and one where she is legally justified in separating herself from him is thus pointed out by Mr. Justice PAXSON in Burkholder's Appeal, 105 Pa. 31: "Nor does it appear that the wife was in duty bound to return to her husband. This would be so had she left him without sufficient cause. If, however, the husband's conduct had been such that she was legally justified in leaving him, she would have the right to remain absent, and her agreement to return would be a sufficient consideration to support a contract. We have the admission in the agreement in question that it was these differences between them 'which caused the said Julia to leave her said husband.' This impliedly leaves the blame at his door, and his contract for her return is such an admission of the sufficiency of the cause of her leaving as to throw the burden of proof upon those who assert the contrary." This doctrine would sustain the decree in the present case, and while there is not unanimity of opinion upon the question there are other well-considered decisions of the courts of other states sustaining the position taken in Burkholder's Estate. Many of these will be found collected in a note to Oppenheimer v. Collins, 60 L. R. A. 406. See also Moayon v. Moayon, 60 L. R. A. 415 and notes, also Reamey v. Bayley, 7 Sadler's Reports, 239; Frank's Estate, 195 Pa. 26; Fisher v. Filbert, 6 Pa. 61. It is true it was said in Kessler's Estate that the question in that case did not arise in Burkholder's Appeal, and there are certain expressions in the opinion of Mr. Justice STERRETT which tend to sustain the appellants' contention that such a contract is contrary to public policy and void on that ground. Nevertheless, as we have already pointed out, the facts of that case did not require a decision of that question and we are unable to say that the decision in Burkholder's Estate was distinctly overruled. Its authority, at least for certain purposes, was distinctly recognized in the opinion of Mr. Justice FELL in Fennell's Estate, 207 Pa. 309, from which the learned judge below quotes.

Viewing this note in the light of the circumstances, it is fairly inferable that it was given not merely in consideration of the wife's condonation of her husband's conduct, but to protect her in pecuniary rights, which by reason of his habits and con-. duct were in peril. It is true she speaks of the note as a gift in answer to a question of appellants' counsel. But it is apparent by that that she meant no more than that he was not legally bound to treat with her upon the subject and to give her such an obligation. While the case is not free from doubt, the majority of us are of opinion that the prima facie obligation arising from the giving and possession of the note and the attendant circumstances has not been overcome.

Therefore, the decree is affirmed at the costs of the appellants.