ELEANOR GRIFFITHS

*v.*

HENRY W. GRIFFITHS.

[Decided May 17th, 1905.]

Evidence in a divorce suit *held* to show that the petition was filed by the petitioner in collusion with her husband for the purpose of dissolving their marriage by consent.

On petition for divorce.

*Mr. Herbert Boggs,* for the petitioner.

BERGEN, V. C.

The petitioner seeks a divorce from the defendant, and bases her claim to a decree upon the statutory offence of desertion, which she says was committed in August, 1898. Both parties were then and, so far as the evidence shows, always had been residents of the State of New York until January 28th, 1902, when the petitioner came to this state, as she asserts, with the intention of making it her permanent home, the defendant now being a resident of New York State. The separation complained of happened while the parties were living at Bath Beach, New York, and followed a dispute between the parties over defendant's attentions to another woman, which took place in the evening, and on the following day defendant left home for business, as usual, but did not return, sending, as the petitioner testifies, a letter to her, the contents of which she is not able to recall beyond the statement that he would not return. The petitioner did not reply to this letter, and shortly after packed and sent to the defendant his trunk and clothing, she remaining at Bath Beach about a month longer, then removing to New York City, where she continued to reside until she came to New Jersey in 1902. During all this time the defendant paid

44

to the petitioner a weekly allowance of $15, and called at her boarding place during the six years she remained in New York at least once in each week. These visits, she testifies, were made for the purpose of seeing their child; that her husband, on each visit, remained at least an hour, and sometimes longer; that she and her son had but one room; that she was present at all of the visits, but never spoke to her husband, nor he to her; that at the beginning of his visits she spoke to him, and because he replied that he was not talking to her she never spoke to him again. It further appears from the petitioner's testimony that her husband has visited her since she has been in East Orange, in this state, four times. The last three visits were in April and May, 1904. The first was on the 2d day of April, when she saw him alone at his request. During the conversation at this interview the defendant asked the petitioner if she would care to live with his folks in New York, to which request she made no reply, and he then said that there was no use talking about it; that they would never live together again; that he wanted to marry someone else, and desired to know whether she would accept a lump sum so that he could be free, and that she refused to consider the offer. Two weeks later he came again and asked the petitioner to bring a suit for divorce, and promised to give her a lump sum, provided she obtained a decree, which proposition she declined; that a few weeks later he came again and told the petitioner that if she did not take a lump sum he would go to Australia, and she would get nothing. The only corroboration which the petitioner offers of her testimony regarding the causes of the separation is the testimony of the son, who was just past thirteen years of age when he was sworn, to testify to facts which occurred six years before, when he was about seven years of age, and it cannot be considered of much weight. All he testifies to, however, is the dispute, the non-return of his father and the sending of the father's trunk, packed with all his clothing, to him. While I am strongly inclined to the belief, based upon the conduct of these parties, that their living apart was consented to by the wife, it is not necessary to put the determination of this cause upon that ground alone. The law of this state deprives this court of jurisdiction unless the petitioner

shall make oath, to be annexed to the petition, that her complaint is not made by any collusion between her and the defendant for the purpose of dissolving their marriage, and it necessarily follows that if at any time during the procedure it shall appear that the jurisdictional condition is not present, the petition should be dismissed.

In *Pohlman* v. *Pohlman, 60 N. J. Eq. (15 Dick.) 28,* Vice-Chancellor Pitney held that the desire of a defendant to be divorced, and her voluntary appearance in a court where she is not obliged to appear in order that the decree may be valid in a foreign jurisdiction, does not amount to collusion, but the facts offered for consideration in the case just cited differ in a very marked degree from those appearing in this case. Collusion in cases of this class is not only a corrupt agreement between the parties whereby one shall commit the matrimonial offence, or under the terms of which evidence of an offence not committed is fabricated, but also includes any agreement whereby evidence of a valid defence is suppressed, and in my judgment, such an agreement, if not expressed, may be implied from the acts of the parties.

It has been well said that in the granting of divorces, the state, as well as the parties, is interested, and that the public is represented by what is called "the conscience of the court," and a judicial investigation of all such cases, particularly when they are *ex parte,* should be pursued with the utmost vigilance for the purpose of determining the *bona fides* of the application. In this case the testimony shows that in May, 1904, and shortly after the interviews between the petitioner and the defendant at East Orange, when the defendant appealed to the petitioner to bring a suit for divorce, and agreed that if she would do so he would give her a lump sum of money, *provided she obtained a decree,* the petitioner consulted her solicitors in New York City about bringing a suit for divorce in that state, based upon the alleged adultery of the defendant. The New York solicitor testifies that he had about decided to bring the suit, when the solicitor of the defendant called upon the solicitors of the petitioner, and negotiations were opened between them which resulted in an agreement, which was afterwards reduced to writ-

ing, by the terms of which, as testified to by the solicitor, $5,000 was to be paid in full in lieu of any alimony, a counsel fee of $500 to the solicitors of the petitioner, and all the costs and expenses of the suit. This sum, however, was to be paid in installments, $500 when the interlocutory decree was made, and $3,000 upon the entering of the final decree, and the balance in notes endorsed by some responsible party. It thus appears that the payment of the sum contracted for depended upon the obtaining of a final decree. This solicitor further testified that after this arrangement between the parties had been entered into they discovered that, as the petitioner did not then reside in the State of New York, she was not qualified as a suitor in that state, and they then decided to shift the scene of action from New York to New Jersey and change the ground of complaint. The same solicitor testifies that the agreement in regard to alimony and counsel fee had relation to the suit to be brought in New York City, and not to this cause, but this statement he qualified later in his testimony, when he said that if a favorable decree be obtained in this suit, including permanent alimony, he expects the solicitor of the defendant will force him to pay the sum of $5,000 in lieu of such permanent alimony, and that the petitioner will accept it.

It is impossible under the evidence in this cause to come to any conclusion other than that this defendant, being anxious that he should be divorced from his wife, the petitioner, applied to her to bring a suit for that purpose, and that after two or three interviews with her on the subject, negotiations looking to that end were entered into between the New York counsel of the respective parties, resulting in a written contract, which, for some reason best known to counsel, has not been produced, by the terms of which the petitioner was to bring her suit in New York, to which, it must be inferred, the defendant was to make no defence, and upon the obtaining of a decree by default, the petitioner was to be paid the sum of $5,000. To be sure, counsel of the petitioner when a witness describes this lump sum as alimony, but the condition that it was not to be paid unless the divorce should be had exhibits, as was said by the chancellor in

*Costill* v. *Costill, 47 N. J. Eq. (2 Dick.) 346,* "the shallowness of such a pretence."

If arrangements between parties providing for the institution of divorce suits, in consideration of the payment of a large sum of money, are to receive the sanction of this court, every legal restriction against the voluntary dissolution of the marriage tie can readily be avoided by designing and unprincipled parties. Can it for a moment be supposed that this defendant, anxious to be divorced, soliciting and importuning his wife on different occasions to begin a suit for that purpose, which importunities she testified she resisted, would, when he had succeeded, by the offer of money, in overcoming her opposition, interpose any defence he might have, and is it not a just inference that the arrangement included the suppression of any defence he might have? Nor do I believe that this petitioner is sincere in this application. At the time her husband applied to her in April and May, 1904, her husband had deserted her, if her story be true, for a period of over six years. Her right of action, if she chose to exercise it, then existed, yet she resisted the persistent request of her husband until, by negotiations, the amount of the "lump sum" she was to be paid if she succeeded in obtaining a divorce had been arranged to her satisfaction, and justifies the inference that the complaint was made by collusion with her husband.

In addition to the foregoing, it is a circumstance of no little moment that this written agreement made between these parties with reference to the institution of this suit has not been offered in evidence, while the New York solicitor of the petitioner has been permitted to testify to so much of the contents as in his judgment might aid his client. If its contents were material in aid of the petitioner's cause, and her solicitor appears to have thought so, because he undertook to prove by oral testimony a portion of its contents, the court is entitled to all of it, for if produced it may afford a complete defence, such a defence as the court, in the interest of the public, would of its own motion interpose, and its suppression was undoubtedly controlled by an implied agreement between these parties that no defence was to be interposed.

In my judgment, no such case has been made by the petitioner as, under the law of this state, justifies this court in extending its aid to further her wishes, and the petition will therefore be dismissed.