ANNIE SHEEHAN

*v.*

CORNELIUS SHEEHAN.

[Decided September 7th, 1910.]

1. The term "collusion," as used in the law of divorce, is not to be limited to a corrupt bargain to impose a case on the court, either by the suppression of evidence or by the manufacture thereof, but includes any agreement between the parties as the result of which no defence shall be made to the dissolution of the marriage tie which would not otherwise be dissolved, in violation of public policy.

2. An agreement between husband and wife that the wife should procure a divorce, and that no defence should be made, the husband having furnished money to the wife to bring the suit. was collusive, requiring the dismissal of the suit, without prejudice, however, to the right to institute another suit not collusive.

Heard on petition for divorce *ex parte.*

*Mr. Patrick J.. Dooley,* for the petitioner.

GARRISON, V. C.

The petition in this cause is for a divorce on the ground of desertion.

The evidence discloses that there is a child and that the wife is wholly without means of support. The petition does not mention the fact that there is a child, and does not pray for any support for the wife or child.

The testimony showed that the husband gave the lawyer of the wife $125 before this suit was brought for the purpose of compensating him for bringing a divorce suit against the husband on the wife's behalf and securing a decree against the husband.

Shortly after the marriage the husband failed to support the wife and was proceeded against by the poor master and compelled to pay her a weekly sum by the order of the police court. He gave bond, absconded, the bond was forfeited, and the wife was paid the amount thereof by the bondsman. Subsequently, the husband returned to this state and he and the wife agreed that she should obtain a divorce, he agreeing to furnish the money to her for this purpose. He did not keep this promise, and she again proceeded against him, and he was arrested and placed in jail. While in jail he and she again agreed that she should proceed to obtain a divorce, and that he would furnish the money. He procured friends or relatives to raise the amount agreed upon ($125), and this sum was paid to a lawyer who, on behalf of the wife, filed this petition.

The petition was filed after the Divorce act of 1907, and has appended the necessary affidavit in which the petitioner avers that

"her said petition is not made by any collusion between her and the said defendant, but in truth and good faith, for the causes set forth in the petition."

A casual reference by the wife in giving her testimony to the payment of money to her lawyer by her husband did not, of course, escape the observation of the astute special master who was hearing the case, and further questioning by him brought out the testimony which I have summarized in my findings of fact just above stated. The master proceeded to give this question the care and consideration which its importance required, and he reached the conclusion that the case was governed by the principles laid down in *Pohlman* v. *Pohlman* (*Vice-Chancellor Pitney, 1900*), *60 N. J. Eq.* (*15 Dick.*) *28,* and *Drayton* v. *Drayton* (*Chancellor McGill, 1896*), *54 N. J. Eq.* (*9 Dick.*) *298,* and that, applying those principles, there was no collusion.

In passing, it should be noted that each of the cited cases was before the 1907 Divorce act, and that the requirements are materially different in that act and the previous act. The subject is one of such importance that it was thought best that

there should be a reported decision on the subject-matter in-volved.

The doctrine of connivance is not involved at all; there is no suggestion that there was any "consenting" (by one spouse) "to evil conduct in the other whereof he afterwards complains," which is the definition of connivance given by Bishop. *2 Bish. M., D. & S. (ed. of 1891) p. 110 § 203.*

The doctrine of collusion, however, is directly involved. Bishop (*Ibid. p. 128 § 249*) says that collusion

"in divorce law is a corrupt combining of married parties to procure a sentence or judicial order by some false practice; as, for one of them to appear, to, or, in fact, do what otherwise would be ground for divorce, or in any way to deceive the court in a cause, thus seeking its inter-position as for a real injury."

And in section 252, on the same page, he says:

"In a just cause there is ordinarily no motive for collusion. But sometimes parties think they may gain something by it; or, what is more frequent, there is a collateral motive for suppressing the truth and substituting a false case in its stead. And however just a cause may be, if parties collude in its management, so that in real fact both are plaintiffs, while by the record the one appears as plaintiff and the other as defendant, it cannot go forward. It is so even where material facts are mutually suppressed while their production would not have changed the result. All conduct of this sort, disturbing to the course of justice, falls within the general idea of fraud on the court, and of contempt of court. Such is the doctrine of principle everywhere. In England, perhaps this conclusion is in dissolution cases aided by the terms of the Divorce act, which are that the petition shall be dismissed when 'presented or prosecuted in collusion with either of the respondents.' "

(Cases in support of the text are cited in the notes.)

The whole of this ninth chapter deals with this subject, and in paragraph 254 instances in point are given, in one of which *Barnes* v. *Barnes, L. R. 1 P. & D. 505*, the court is quoted as saying that the arrangement between the parties amounted to this, in substance: "The petitioner said to the respondent, 'If you do not oppose, I shall get a divorce cheaper than if you do. Therefore, keep quiet, and I will give you some money when the decree is obtained, and I will do no harm to the co-respond-

ent.' If this is not collusion, I do not know what it is. It is said that she had no defence to offer, and it certainly seems that she had not, as far as her own adultery is concerned. But if she had brought to the knowledge of the court the facts which have now been proved as to the petitioner's conduct in exposing her to temptation, it would have been a grave question whether the court would have granted a divorce." The decree *nisi,* which had been rendered in favor of the petitioner, was rescinded, and the petition dismissed.

In section 258 it is stated:

"If the suit is carried on by a plaintiff, not from his own desire for a divorce, but for the benefit and at the request of the defendant, any one of several reasons will prompt its dismissal. And as a fraud on and contempt of the court it is classed as collusion."

Chapter 21 (at *p. 284*) is devoted to the matter of the consenting of the parties, their bargainings, and the law respecting the same.

In section 696 it is stated: "Any agreement for divorce or any collateral bargaining promotive of it, is unlawful and void." And section 698 cites an opinion from *118 Ind. 533, 552,* as follows: "It may be that if an action for divorce is pending, or if, in anticipation of such an action, the parties meet and agree, upon the amount of alimony to be allowed to the wife in case a divorce is granted, and the arrangement is just and equitable, and confining strictly to the matter of alimony, it will be sustained. But if the agreement is broader in its terms and its tendency is to interest the husband in procuring a divorce, or in foregoing resistance to an effort by his wife to that end, then it is contrary to public policy and void." And in the same section other cases are cited which are said to hold that where the bargaining is to suppress a part of the evidence and take the judgment to which the other party entitled them, it is void. And so, a wife's undertaking to accept $500 in full for all her claims as wife or widow in her husband's property, coupled with her promise not to resist his divorce suit, was held to be a mere nugatory attempt to defraud the court in which he afterwards should bring his suit.

And in section 699 there is the following:

"In Connecticut after a husband had committed adultery and contracted venereal disease, he and the wife covenanted through a trustee that they would dissolve, as far as they could, the obligations of the marriage; that he would provide for her a separate maintenance, and that she should be no further chargeable to him, and that, seeing he had offended, he would furnish money and testimony to procure a divorce, she instituting the necessary proceedings, to be under his direction, and a majority of the Supreme Court of Errors held this agreement to be fraudulent and void as tending to mislead the court and interfere with the administration of justice. All were of opinion that had it been to procure false testimony, or impose upon the court, it would have been void. But the dissenting judges contended that no fraud appeared in the facts; that it being the duty of the husband to furnish his wife, who had no money, with the means to procure a divorce, and afterwards to pay alimony, there was no fraud in his promising what he was under a legal duty to perform; and that the object of placing the control of the divorce suit in his hands having been merely to prevent the fact of his having had venereal disease becoming public, there was no imposition upon the tribunal in the omission of an incident which could not influence the result, the other proofs being ample. It was not denied that a suit for divorce gotten up solely by the defendant, under his own control and for his own benefit, would, on this fact appearing, be dismissed."

(Another case is also cited, from Wisconsin, in the note.)

In paragraph 700 it is stated that no harm will come to the plaintiff or the public simply from the defendant's not choosing to make and not making a defence. "But a bargaining that there shall be none is not permissible, and no promise founded upon such an undertaking can be enforced."

In section 702 it is pointed out that it is not against public policy for the parties to a divorce suit to enter into an agreement as to what alimony shall be allowed and how their property should be divided, and the like, on the rendition of a decree,

"but if the contract is of a sort to stimulate a divorce, to discourage any defence, or in any way to impose upon the court, it will be void; for example, it will be void if so framed as to have effect only on condition that a divorce is granted without alimony."

The *American and English Encyclopædia of Law*, second edition, volume 9, page 832, defines collusion as follows: "A

conspiracy of the husband and wife to obtain a divorce by suppression of the facts or by false or manufactured testimony," a very different definition, it will be seen, from that of Bishop.

On page 833 of the same authority, it is said:

"Where collusion is disclosed the court will not proceed to examine the evidence to see whether there was in fact a meritorious cause for divorce, for it would be unsafe to act upon further evidence. The case will not be dismissed, however, where one person discloses all the facts to the court and contests the case in good faith. It is, therefore, immaterial, that the facts suppressed were insufficient to have changed the result."

At *p. 834:*

"Where collusion appears or is disclosed in the evidence, the court will refuse all relief and will not enforce any contract of the husband and wife for the purpose of facilitating a divorce. Collusion will be presumed where it is disclosed that * * * the parties * * * have agreed to allow the case to go by default without an appearance or answer by the defendant, or agreed that the innocent party would procure a divorce for the guilty party, the latter to pay the former a sum of money when the decree is obtained." * * *

I do not think that I have made an absolutely exhaustive search of the authorities outside of New Jersey, but I have made some, and have found the following cases dealing with the general subject:

*Hum* v. *Twombly* (*Mass., 1902*), *181 Mass. 170; 63 N. E. Rep. 336:* "If a wife in good faith undertakes to procure a divorce to which she legally is entitled upon the ground of adultery already committed by her husband, and to prevent unnecessary publicity or scandal her husband agrees with her as to the amount of alimony and the expense to be incurred for witnesses, this does not make a divorce so obtained collusive or fraudulent."

*Gentry* v. *Gentry* (*Mo., 1896*), *67 Mo. App. 550:* "Where husband and wife by an agreement stipulate that they mutually agree to make application for a legal separation, &c., and one of them thereupon sues for a divorce, the suit cannot be maintained."

*Branson* v. *Branson* (*Neb., 1906*), *76 Neb. 780; 107 N. W. Rep. 1011:* "An agreement between the parties to a divorce suit for a divorce for the collusive rendition of a decree therefor will

defeat the action, and it is immaterial that one of the parties may have supposed the agreement to be free from legal or moral wrong."

The term "collusion" in New York has been defined as follows:

"An agreement between a husband and wife to procure a judgment dissolving the marriage contract, which judgment, if the facts were known, the court would not grant."

*Doeme* v. *Doeme (New York, 1904), 89 N. Y. Supp. 215; 96 Ap. Div. 284.* The application of the foregoing definition to proven facts will be found in this case, and in *Cowan* v. *Cowan, 53 N. Y. Supp. 93,* and *Dodge* v. *Dodge, 90 N. Y. Supp. 438; 98 Ap. Div. 85.*

*Latshaw* v. *Latshaw, 18 Pa. Sup. Ct. Rep. 465:* "Where it appears that the application for divorce is simply that the parties may be freed and separated from each other, or that the libel is not founded on motives of sincerity and truth, but demanded for light reason, or in a matter smacking of collusion, the decree must be invariably refused." It appearing in that case that the wife met her husband and told him that she was going to get a divorce for non-support and abuse, and that he agreed to it and to make no defence.

*Erwin* v. *Erwin (Texas, 1897), 40 S. W. Rep. 53:* "The fact that the parties to a divorce suit, a few days before the trial, agree as to a division of the property in case a divorce is granted, and that defendant desires to withdraw his answer and allow plaintiff to have a decree, was not alone sufficient to show collusion."

The following are the cases in New Jersey dealing with collusion:

*Costill* v. *Costill (Chancellor McGill, 1890), 47 N. J. Eq. (2 Dick.) 346.* In this case the fact that the defendant husband voluntarily appeared so that he might be served, and that the wife, the petitioner, obtained $500 from him *after the suit had begun,* led the chancellor to believe that a collusive agreement had been entered into between the parties, and he investigated to ascertain the facts.

*Drayton* v. *Drayton* (*Chancellor McGill, 1896*), *54 N. J. Eq.* (*9 Dick.*) *298*. In that case the suspicions of the chancellor were aroused as to whether the suit was not collusive because the defendant had originally made accusations against his wife which he did not in any way seek to prove at the trial, allowing the case to go upon the testimony produced by the petitioner; and furthermore, the petitioner failed to demand the custody of his children. He took proofs and satisfied himself, he says, that there was no collusive agreement nor understanding between them.

*Pohlman* v. *Pohlman* (*Vice-Chancellor Pitney, 1900*), *60 N. J. Eq.* (*15 Dick.*) *28*. In that case the suspicions of the vice-chancellor were aroused because there was a voluntary appearance of the defendant. In his own language he states it as follows: "The next question is as to whether the fact that the wife is so far desirous of having a divorce, and one that shall be valid, as to induce her to voluntarily appear in a court where she is not obliged to appear, amounts to collusion?" He expressly finds that there were no facts suppressed, and that the original desertion was not committed nor persisted in by any connivance. He cites three or four definitions of collusion, and from his treatment of them it is obvious that from them he extracts the principle that the essence of collusion is an agreement to suppress facts or manufacture a case. It is nowhere suggested in his opinion that there was any agreement between the parties that the case should be brought, or that the defendant should submit herself, or that the defendant in any way made any agreement with the petitioner; his suspicions having been entirely aroused by her voluntary appearance, and the decision going, in my view, no further than to hold that that fact alone is not sufficient either to find collusion or dismiss the suit upon any ground of public policy.

*Griffiths* v. *Griffiths* (*Vice-Chancellor Bergen, 1905*), *69 N. J. Eq.* (*3 Robb.*) *689*. In this case we have an *ex parte* divorce proceeding on the ground of desertion. After a review of the facts which were produced by the petitioner to prove the desertion, and expressing his inclination toward an opinion that they were not sufficient, the vice-chancellor says that he does not put

the decision upon that ground, then proceeds as follows: "The law of this state deprives this court of jurisdiction unless the petitioner shall make oath, to be annexed to the petition, that her complaint is not made by any collusion between her and the defendant for the purpose of dissolving their marriage, and it necessarily follows, that if at any time during the procedure it shall appear that the jurisdictional condition is not present, the petition should be dismissed." In *Pohlman* v. *Pohlman, 60 N. J. Eq. (15 Dick.) 28,* the vice-chancellor held "that the desire of a defendant to be divorced, and her voluntary appearance in a court where she is not obliged to appear in order that the decree may be valid in a foreign jurisdiction, does not amount to collusion, but the facts offered for consideration in the case just cited differ in a very marked degree from those appearing in this case. Collusion in cases of this class is not only a corrupt agreement between the parties whereby one shall commit the matrimonial offence, or under the terms of which evidence of an offence committed is fabricated, but also includes any agreement whereby evidence of a valid defence is suppressed, and, in my judgment, such an agreement, if not expressed, may be implied from the acts of the parties." He then goes on to show that public policy is always involved in divorce suits, and he finds that the defendant appealed to the petitioner to bring a suit for divorce and agreed that if she would do so he would give her a lump sum of money provided she obtained a divorce. And after discussing this, he says: "If arrangements between parties providing for the institution of divorce suits, in consideration of a large sum of money, are to receive the sanction of this court, every legal restriction against the voluntary dissolution of the marriage tie can readily be avoided by designing and unprincipled parties." He therefore finds that there was collusion, and dismissed the suit.

In some of the authorities above cited it will be found that the court, upon being satisfied that the defendant and complainant had agreed that the suit should be brought, had dismissed the suit without prejudice to the right to bring another one not the result of such collusion.

My own view of the situation, briefly stated, is this: The policy

of our law favors marriage, and disfavors divorce. Parties may not be permitted to make agreements with respect to divorce suits which would be perfectly proper to be made in other litigations. In divorce suits public policy requires that certain agreements shall not be made between the parties and when such interdicted agreements are made they are termed "collusive."

What is termed "collusion" in divorce suits is a definite kind of agreement of parties concerning the divorce. If collusion is to be limited (as some of the definitions would limit it) to "a corrupt bargain to impose a case upon the court," that is, either by the suppression of evidence or by the manufacture thereof, then, each case where there was an agreement between the parties would have to be investigated to see whether such an agreement came within the interdiction of the definition of collusion. But if collusion is given an ampler definition, so as to include any agreement between the parties as a result of which no defence shall be made, then the case will not be investigated after the ascertainment that there is such an agreement, because that agreement itself would be within the definition of collusion and would defeat the suit.

I cannot escape the conviction that our statute which requires an affidavit by the petitioner that "the said petition is not made by reason of any collusion" * * * indicates that with us "collusion" must be given the broader and ampler definition. It seems to me to be perfectly clear that if a man and wife agree that one of them shall bring a suit for divorce against the other, and that no defence shall be made, such an agreement should be included in the definition of collusion. And it also seems clear to me that when they have thus agreed the party making the petition certainly makes it by collusion.

This definition, of course, would not include cases in which the defendant was willing the suit should be brought or was even anxious or desirous that it should be brought, but would include cases where the defendant and the petitioner *agreed* that it should be brought and that no defence shall be made, *a fortiori,* where he not only agrees that it should be brought and be undefended, but advances money to induce its bringing.

My reason for thinking that the definition should be the

broader one is that it would then be clearly and consistently in keeping with the public policy which we maintain in this respect. Because, if we limit the term "collusion" to the narrow definition (which only includes the suppression of evidence or the manufacture thereof), and permit agreements that suits shall be brought in which no defence shall be made, we are creating by such permission a situation in which the chances of our ever finding out the truth concerning the matter are almost zero.

If parties agree that one of them shall bring a suit and the other will not defend, it is impossible to escape the conviction that the court will have practically no opportunity to ascertain whether evidence is suppressed, or manufactured evidence is offered. I do not wish to be understood as including within the definition of collusion agreements by which the husband contracts to pay a certain amount of alimony to his wife without the intervention of the court. I do think, however, that within the definition of collusion should be those cases in which the husband agrees with the wife that he will furnish a sum of money with which she is to procure a divorce against him.

I think that what has been done in some courts should be done in such cases; that is, where the court is convinced that there is not manufactured testimony or suppressed evidence, but that the suit is collusive because of the agreement, the suit should be dismissed without prejudice to the right to bring another suit which shall not be collusive.

I am clearly of opinion that if it be held that an agreement between husband and wife that suit shall be brought and no defence entered is within the definition of collusion, the court should infer such an agreement from the fact that the husband has, before the suit was begun, advanced money to the wife, or to a lawyer for the wife, for the purpose of bringing the suit.

As is pointed out by Chancellor McGill, Vice-Chancellor Bergen and other judges, it is a shallow pretence that there is any intention to defend if the defendant furnishes money for the prosecution of the suit. And it certainly is not a violent inference for the court to find an agreement in consonance with the defendant's act in furnishing the money to enable a suit to be brought against him.

The result is that the petition in this case will be dismissed without prejudice to the right of the petitioner to bring any suit free from collusion.