The bill prays specific performance of an agreement for the payment of alimony and counsel fees entered into between the parties while they were still husband and wife, but pending a suit by the wife, the complainant here, against her husband, the defendant here, for divorce instituted in Pennsylvania in May, 1920, on the grounds of adultery and extreme cruelty. The parties were married in the State of New Jersey. The acts of adultery charged were alleged to have been committed in New Jersey. The acts of cruelty charged were alleged to have been committed in the State of Pennsylvania, where the parties resided at the times mentioned. An order to show cause why defendant should not be obliged to pay alimony and counsel fee to complainant was entered in the Pennsylvania proceeding in January, 1922. On May 11th, 1922, after the entry of this order, but before any hearing thereon, a written agreement was entered into between the parties, reciting the divorce action and the alimony *Page 232 
proceedings, whereby the defendant agreed to pay the complainant $25,000 in lieu of alimony and counsel fees — $5,000 down and $2,500 annualy thereafter for a period of eight years. Immediately after the execution of this agreement the divorce libel was amended by striking out the charge of adultery as one of the grounds for divorce. While the written agreement does not mention this fact, it appears from the testimony in this cause that the abandonment of the charge of adultery in the divorce action was one of the considerations of the agreement, and that another of the considerations was the agreement by the complainant not to institute proceedings against the co-respondent named in the divorce libel for damages for alienation of the affections of the complainant's husband. A final decree for divorce was entered in favor of the complainant in the Pennsylvania proceeding on July 5th, 1922. No defense to this proceeding was interposed by the defendant, and the decree was based upon the ground of extreme cruelty.
The $5,000 down payment mentioned in the agreement and the first annual installment of $2,500, due January 19th, 1923, have been paid. The defendant refused to pay the installment falling due under the terms of the agreement on January 19th, 1924, and thereupon this suit was brought to compel such payment.
The answer of the defendant, filed in this cause, alleges that the agreement is void as against public policy of the State of Pennsylvania because collusive, and as being an agreement to facilitate the procurement of a divorce; that the agreement was contingent upon the complainant here obtaining a decree of divorce in the Pennsylvania proceeding above referred to, and that one of the considerations for said agreement was his engagement not to defend said suit for divorce.
Counsel for defendant, in his brief, bases his argument upon three propositions, as follows:
1. That the complainant has an adequate remedy at law.
2. The agreement sued on is void in law because it is against public policy. *Page 233 
3. The agreement sued on is void in fact because it is collusive.
I shall consider these three propositions in the inverse order of their statement.
As a general proposition of law, it may be stated that all collusive agreements or agreements to facilitate divorce are void as against public policy. As was said by Vice-Chancellor Garrison, in Sheehan v. Sheehan, 77 N.J. Eq. 411 (at pp.419, 420):
"The policy of our law favors marriage, and disfavors divorce. Parties may not be permitted to make agreements with respect to divorce suits which would be perfectly proper to be made in other litigations. In divorce suits, public policy requires that certain agreements shall not be made between the parties, and when such interdicted agreements are made they are termed `collusive.'" See, also, Costill v. Costill, 47 N.J. Eq. 346;Drayton v. Drayton, 54 N.J. Eq. 298; Pohlman v. Pohlman,60 N.J. Eq. 28; Griffiths v. Griffiths, 69 N.J. Eq. 689, and see, generally, 13 Corp. Jur. 463. This is also the law in Pennsylvania. In re Mathiot's Estate, 90 Atl. Rep. 139; Hoffman
v. Hoffman, 30 Pa. 417; Kilborn v. Field, 78 Pa. 194; Irvin
v. Irvin, 169 Pa. 529; Latshaw v. Latshaw, 18 Sup Ct. 465, and, at least in this state, collusion may be implied from the acts of the parties. Griffiths v. Griffiths, supra.
The question to be determined by me under this heading, therefore, is whether or not, in view of the evidence submitted to the court in this case, the agreement was, in fact, collusive, and in considering this question it must be borne in mind that the person most interested in having the agreement determined to be collusive, and, therefore, void, is the defendant himself.
The only testimony submitted indicating that the agreement here under review was collusive is that offered by the defendant. He testified that as a part of this transaction, although not expressed in the written agreement, he agreed not to defend his wife's suit for divorce, and that his obligations under the agreement were contingent upon a decree being *Page 234 
entered against him; also, that the agreement on behalf of his wife to withdraw her charge of adultery is an additional feature which renders the agreement collusive. His testimony, coupled with his attitude on the witness-stand, was very far from convincing, and it seems to me that the fact that he paid $5,000 to his wife's attorney on the day the terms of the agreement were concluded and nearly two months before the decree for divorce was entered rather negatives his contention that the agreement was contingent upon the entry of a decree; but counsel for defendant insists that the court ought to infer collusion from the course of the divorce proceedings and the actions of the parties in connection therewith. While, of course, any agreement made between the parties to a divorce suit during its pendency is always open to suspicion, I do not find any evidence relating to the divorce suit here in question which is sufficiently convincing to me to justify me in finding collusion. Counsel for defendant suggests that it is logically inferable that prior to the beginning of the divorce suit both parties were desirous of being divorced, and that the suit for divorce was the result of an agreement between them that the wife should obtain a divorce. The answer to this is that there is not a scintilla of proof on that point. It is quite clear to me that up until the time of the negotiations for the settlement of alimony no agreement respecting the divorce suit existed between the parties. The contention of the defendant that the agreement was collusive rests entirely, therefore, upon his own testimony, and such inferences as the court might draw from the facts in connection with the divorce suit. Opposed to this evidence is the positive testimony of the complainant herself and two reputable members of the Philadelphia bar, one of whom represented the defendant in the Pennsylvania divorce proceeding and who prepared this agreement. These witnesses all testified clearly and positively that not only was there no agreement that the defendant should not interpose a defense to the divorce action, but that he had no defense to interpose. This presents a disputed question of fact, and I have no hesitancy in saying that I prefer to accept the testimony of the complainant and *Page 235 
these two lawyers rather than that of the defendant. The clear weight of the evidence is against the defendant on this point. As to the withdrawal of the charge of adultery indicating collusion, to my mind it does not. This is not the suppression of a defense. It is an abandonment of one cause of action, and might be considered as the suppression of scandal in the interest of morality. Such an agreement is perfectly proper under the Pennsylvania decisions. Irvin v. Irvin, supra. In that case the wife entered into an agreement that she would not assign any other cause for divorce than desertion. It was claimed that this rendered the agreement void, and the court said: "There is no semblance of an illegal consideration in the agreement. She only expressly stipulates she will not assign any other cause for the divorce than desertion. In this there was not only nothing unlawful, but there was nothing discreditable to either. From the very fact of excluding other causes there is a fair implication that the husband was conscious of the existence of others involving graver moral turpitude than desertion. A sense of shame in him still remained and there was a willingness on her part to suppress that which would be disgraceful to him."
It seems to me that this language has an apt application to the facts in this case.
I am therefore clearly of the opinion that the agreement was not collusive in fact.
Second, is the agreement void in law as against public policy?
In determining this question, it must be borne in mind that the agreement here in question is a Pennsylvania contract.
If the object of a contract is to divorce man and wife, the agreement is against public policy, and void (13 Corp. Jur.463); and, generally speaking, all agreements conditioned upon divorce are held to be void as against public policy. 13 Corp.Jur. 464. But the general rule is also that a contract in settlement of claims for alimony is valid where there is no collusion to procure a divorce, and the fact that the agreement is entered into while divorce proceedings are pending will not affect its validity, unless it can be said that its *Page 236 
purpose or effect was in some way to facilitate the granting of the divorce. Ibid. While it has been held in this state "that there is nothing illegal in the fact of husband and wife living apart by mutual assent," and separation agreements between husband and wife, in so far as they provide for separation only, are unenforceable in New Jersey (Aspinwall v. Aspinwall,49 N.J. Eq. 302), such agreements, when providing for immediate separation, are, in most jurisdictions, held valid. 13 Corp.Jur. 465. This is especially so in Pennsylvania. See In reFrank's Estate, 195 Pa. 26; 45 Atl. Rep. 489; In re Singer'sEstate, 233 Pa. 55; 81 Atl. Rep. 898; Irvin v. Irvin, supra, and other cases cited in the notes of 13 Corp. Jur. 466. The validity of a contract depends upon the law of the state in which the contract was made. 13 Corp. Jur. 253.
In Pennsylvania an agreement providing for alimony made during the pendency of a divorce suit, apparently, is not void as against public policy if free from collusion and not made for the purpose of facilitating a divorce.
I have already held that there was, in fact, no collusion in connection with this agreement; that it was not made for the suppression of a defense, nor contingent upon the obtaining of a decree, and that it was not an agreement for facilitating divorce. In a case quite similar to this (Maisch v. Maisch,87 Conn. 377; 87 Atl. Rep. 729) the Connecticut court said:
"There is no showing that the contract was actually made for the purpose of collusion or suppression of evidence, and no claim that the decree is for any reason invalid, so that nothing remains unperformed except a financial obligation which the defendant seeks to evade. The public policy of Connecticut is not invoked to prevent the doing or continuance of any act forbidden by our law, but as a token of our disapproval of a past transaction in South Dakota between residents of that state which was unobjectionable under their law. A disapproval, moreover, founded on a general objection to the making of such contracts, and not upon any special objection to this particular transaction. *Page 237 
"We think it clear that the State of Connecticut is not deeply concerned as a matter of public policy in reprehending this contract. The right of each state to determine as a matter of public policy the conditions upon which the marital relations of its citizens may be dissolved is fully recognized, and it would seem that the same policy ought to control the validity of contracts made in view of pending divorce proceedings. It is no part of the public policy of Connecticut to be more careful than the State of Dakota itself in protecting the divorce courts of Dakota against collusion."
This language seems quite pertinent to the instant case. But it is contended by counsel for defendant such agreements in New Jersey are absolutely void. When I say "such agreements" I mean non-collusive agreements respecting alimony settlements or respecting support and maintenance of the wife made either prior to or during the pendency of the divorce proceedings. I am unable to entirely agree with counsel for defendant on this point. While it is quite true that such agreements are usually viewed with suspicion and are not favored by our courts, no New Jersey case has gone so far as to hold such agreements void per se; at least, I have been unable to find any such cases, nor has the diligence of counsel for defendant referred me to any. Our Divorce act vests in the court of chancery the power to order suitable support and maintenance for the wife, and "from time to time to make such further orders touching the same as shall be just and equitable." This power and authority has been jealously guarded by this court, in consequence of which it has uniformly been held that all such agreements are subject to approval or modification by this court; and no such agreements, unless fair, equitable and just, will be approved or enforced. But they have just as uniformly been enforced when couched in such terms as to meet the court's approval. Calame v. Calame, 25 N.J. Eq. 548;Buttlar v. Buttlar, 70 N.J. Eq. 675; Buttlar v. Buttlar,71 N.J. Eq. 671; Halsted v. Halsted, 74 N.J. Eq. 596; Rennie v.Rennie, 85 N.J. Eq. 1; Boehm v. Boehm, 88 N.J. Eq. 74;Hollingshead v. Hollingshead, 91 N.J. Eq. 261. *Page 238 
If these agreements, providing for separate maintenance, were void, per se, they would not have been enforced. In Boehm v.Boehm, supra, Vice-Chancellor Leaming said: "But while the right of spouses to contract touching the discharge of this matrimonial duty of the husband cannot be regarded as unrestricted, I think it unnecessary to here determine that all such agreements are void or should be wholly disregarded; a settlement upon a wife of a fixed and certain income for her life would accomplish the purpose of the act in so far as the income should be found adequate, and the payment of a gross amount might in some circumstances be treated as relieving a husband from his obligation of support to whatever extent should be found just under the circumstances."
It will be noted that the agreement under review provides for "money payments of the character of an annuity" for a period of eight years, and is thus brought within the rule announced by the chief-justice in Calame v. Calame, supra.
There is no suggestion in this case that the provisions for the wife are unfair, inequitable, unsuitable or improper. The complainant herself makes no such claim, and, under the circumstances of this case, the burden of proof that the agreement is unjust and unfair is upon the defendant, and he offers no evidence tending to show that fact. Where a husband comes into court and asks the enforcement of a contract that he has made directly with his wife, the burden is upon him to show the fairness of the agreement and the equities which call for its enforcement. Ireland v. Ireland, 43 N.J. Eq. 315.
Contrariwise, if the husband resists the enforcement of a contract made with his wife, the burden of proving the unfairness of the agreement as a ground for its non-enforcement, would be upon the husband; but the equities to be considered in determining the fairness or unfairness of such a contract are the equities as applied to the wife. There being nothing in the case to indicate that the contract is in any way inequitable as applied to the complainant, I am therefore of the opinion that the agreement in question is valid *Page 239 
under the laws of Pennsylvania, is not invalid, per se, under our law and is enforceable here.
As to the first contention of the defendant, that the complainant has an adequate remedy at law, this may be best answered by the statement that in this state the law is settled that equity has complete and exclusive jurisdiction over contracts between husband and wife, and that this extends to their specific enforcement. Buttlar v. Buttlar, 71 N.J. Eq. 671.
The agreement here was made by the parties while they were still husband and wife, and the agreement has been fully performed by the wife and partially performed by the husband. The wife, as was said in Maisch v. Maisch, supra: "In reliance on the defendant's express agreement, valid where made * * * has omitted to demand alimony from the court and has now lost her opportunity to do so."
As the complainant has fully performed her part of the agreement, it would be inequitable to permit the defendant to default thereon. While not denying the rule laid down inButtlar v. Buttlar, supra, with respect to the jurisdiction of the court of chancery in cases of this kind, counsel for defendant claims that as the reason for the rule was there expressed to be "that it is not the incapacity of one spouse to sue the other at law which is controlling, but their incapacity at law to make a contract," and that as the contract was made in Pennsylvania, where contracts between husband and wife are held valid, the reason for the rule does not here exist, and that, therefore, the rule should not be applied; but, in this connection, it must be borne in mind that while a contract is construed according to the law of the place where made, the method of enforcing such contract must be in accordance with thelex fori, which, in this case, is the law of New Jersey.Jaqui v. Benjamin, 80 N.J. Law 10; Cronan v. Fox,50 N.J. Law 417.
In the case of Jacqui v. Benjamin, Chief-Justice Gummere said: "The almost universal rule with relation to the remedies for enforcing contracts is that they are regulated by the law of the state where such remedies are pursued, and *Page 240 
not by the law of the state where the contract was made and to be performed."
The defendant should not object to the application of this rule, since he has, of his own choice, made this the state of his residence, thereby voluntarily submitting himself to its laws, and has compelled the complainant to enter this state to enforce the contract. To accede to the contention of the defendant that by removing to this state he can thereby avoid the obligation of this contract would be, in effect, to offer New Jersey as a haven for all ex-husbands who wished to avoid the results of their alimony contracts and furnish for them a complete refuge from prosecution thereunder. Since in this state equity has exclusive jurisdiction over contracts between husband wife, it seems idle to contend that because contracts between husband and wife are not prohibited in Pennsylvania, where this contract was made, equity ought not to assume jurisdiction for its enforcement here. This agreement having been made while the parties were still husband and wife, the subsequent entry of a divorce decree could not divest the complainant of her vested rights under the agreement. Buttlar v. Buttlar, supra; Galusha v. Galusha,116 N.Y. 635.
 Bullock v. Bullock, 57 N.J. Law 508, is cited by counsel for defendant in support of the proposition that a court of law is the proper forum in which to enforce a decree of a foreign jurisdiction for the payment of alimony, and he argues that the same rule should be applied to the enforcement of agreements to pay alimony made in foreign jurisdictions. That case holds that an action at law may be maintained in this state upon a decree for alimony made in New York, if the New York courts had jurisdiction of the subject-matter and of the person of the defendant. Such, undoubtedly, is the law; but the agreement which is the subject of this suit is not a foreign decree. A foreign decree, being in the nature of a judgment, is not open to collateral attack, and a suit at law thereon is therefore entirely proper, the decree being conclusive evidence of the debt. In an action *Page 241 
upon an agreement between husband and wife, however, the agreement is not always conclusive as to the rights of the parties, and the reasons for courts of equity assuming jurisdiction over such contracts are well stated by Chief-Justice Beasley in Woodruff v. Clark, 42 N.J. Law 198, as follows:
"It was obviously intended that the court of equity should, as it had always done, prior to the amplification of the rights of the wife, exercise a supervision over the engagements of married persons. Nor is it deemed that such an adjustment was an unwise or illiberal one. The subject is one that requires more delicate handling than could be given to it through the instrumentality of a jury. Contracts of this class do not always rest, in point of validity, on fixed and palpable rules of law; sometimes they approach closely to the field of discretion. * * * So, it often happens that relief is afforded only upon equitable conditions. All these precautionary measures would be wanting to a suit at law. The union arising from the matrimonial connection is so entire, the interest so mutual and the confidence so complete, that the question in the given case, whether a transfer of property has been equitably obtained by one of the married persons from the other, or is the creature of coercion or undue influence, is often one of the most subtle and abstruse subjects than can be presented for judicial investigation — an investigation to which the methods of a court of conscience are alone adapted. Few subjects would seem to fall more appropriately under equitable cognizance."
I am of the opinion, therefore, that this court has complete jurisdiction over the present suit; that the bill for specific performance was properly filed in this court, and that the complainant is entitled to the relief prayed for. I will therefore advise a decree in favor of the complainant and in accordance with these conclusions. *Page 242