ROBERT WOOD JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 12749.   Promulgated April 20, 1948.

*Paul F. Myers, Esq., Martin W. Meyer, Esq.,* and *Kenneth Perry,
Esq.,* for the petitioner.
*A. H. Monacelli, Esq.,* for the respondent.

648

650

OPINION.

HILL, *Judge*: Petitioner contends the payments of $30,000 each in the years 1942 and 1943 were in discharge of a legal obligation which was incurred by him under a written instrument incident to divorce,

in accordance with section 22 (k), Internal Revenue Code,[1] and, therefore, are deductible under section 23 (u). Solution of the problem hinges upon whether the agreement signed by petitioner and Elizabeth on September 5, 1929, was made in connection with a contemplated divorce. See *Tuckie G. Hesse*, 7 T. C. 700, 704.

There is sharp conflict between the testimony of Elizabeth and petitioner. Petitioner stated he would not have signed the agreement in question if he had not had Elizabeth's assurance that she would begin divorce proceedings. Elizabeth, on the other hand, testified that at the time of its execution there was no agreement, either oral or written, between her and petitioner that she would initiate a divorce action. We conclude from all the evidence, however, that Elizabeth did assure petitioner she would commence a divorce suit if he would sign the agreement in question and that there was a direct relationship between that instrument and the divorce proceeding.

It should be noted, first, that the action for divorce was started by Elizabeth on December 10, 1929, slightly more than three months after the execution of the involved instrument. We believe that alone speaks convincingly for petitioner's contention that there was some connection between it and the divorce.

Moreover, from the moment of separation in 1926 petitioner sought a divorce. He consulted prominent attorneys in New Jersey and in New York for the purpose of obtaining a divorce. From August 1926 to September 5, 1929, he persistently either contacted Elizabeth personally or through her attorney, seeking both divorce and a satisfactory financial arrangement for her support and maintenance. In May 1928 he became engaged to be married, contingent upon Elizabeth's procuring a divorce, and he testified that after becoming engaged he felt divorce would be worth almost "any price." His offers for Elizabeth's maintenance and support ranged from annual payments of $16,000 to $50,000, plus the use of his residence, rent-free and tax-free, and reim-

---

[1] The material part of section 22 (k) reads as follows:
"SEC. 22. GROSS INCOME.

\*    \*    \*    \*    \*    \*    \*

"(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, \* \* \* a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. \* \* \*"
See, sec. 29.22 (k)–1, Regulations 111.

bursement for the clothing and education of their son. We believe the foregoing facts, which clearly indicate not only petitioner's strong desire for divorce, but also much effort and expense to accomplish that purpose, substantiate his testimony that he would not have signed the agreements of September 5, 1929, unless he had had Elizabeth's assurance that she would divorce him.

It is true the written instrument did not mention that it was conditioned upon Elizabeth's bringing an action for divorce. However, both Elizabeth's and petitioner's attorneys believed that if the agreement had been so conditioned it would have been voidable and also would have constituted collusion for divorce under New Jersey law. See *Griffiths* v. *Griffiths*, 60 Atl. 1090; 69 N. J. Eq. 689; *Sheehan* v. *Sheehan*, 77 Atl. 1063; 77 N. J. Eq. 411; *Dennison* v. *Dennison*, 130 Atl. 463; 98 N. J. Eq. 230.

Respondent points to the language of the letter written to petitioner by his attorney under date of August 8, 1929, and argues that it proves the involved written instrument was not conditioned upon or in consideration of any promise or agreement on Elizabeth's part to institute a divorce proceeding. It should be mentioned, however, that it also contains statements of Elizabeth's intention to begin a divorce action, which, we believe, was based upon petitioner's agreement to make a satisfactory arrangement for her maintenance and support. Moreover, we think the language that the written instrument executed on September 5, 1929, was not to be conditioned upon or in consideration of Elizabeth's procuring a divorce merely reflected the attorneys' concern over whether the agreement would fall within the New Jersey rule on collusion.[2]

Respondent further argues that the undated list of items prepared by petitioner sometime during 1928 and setting forth various amounts he had paid annually to Elizabeth and for household expenses shows the agreements of September 5, 1929, were no more than the reduction to writing of a preexisting financial arrangement. This fact, he claims, refutes petitioner's argument that he would not have made such a generous offer if Elizabeth had not agreed to a divorce. It is true that the items on the list, including those Elizabeth added, totaled

---

[2] The following language from *Griffiths* v. *Griffiths, supra,* is significant in this connection:

"* * * If arrangements between parties providing for the institution of divorce suits *in consideration of* the payment of a large sum of money are to receive the sanction of this court, every legal restriction against the voluntary dissolution of the marriage tie can readily be avoided * * *." [Italics supplied.]

The *Dennison* case, *supra,* contains the following:

"* * * generally speaking, all agreements *conditioned upon* divorce are held to be void as against public policy. * * * But * * * a contract in settlement of claims for alimony is valid where there is no collusion to procure a divorce * * *." [Italics supplied.]

approximately $56,000 and that that amount was somewhat in excess of the annual payments provided for her by petitioner. It should be noted, however, that petitioner promised to give Elizabeth much more than payments of $50,000 yearly. He also agreed to give her, for so long as she desired, without any charge for taxes, rent, or other costs or assessments, the use of his residence and other buildings on Bellevue Farm; he consented to give her legal custody of their son; and he promised to pay the expenses for the son's governess, clothing, and education. In addition, he consented to place $400,000 in an irrevocable trust to guarantee part payment of the $50,000 Elizabeth was to receive each year, with remainder benefits to their son after her death. Finally, he agreed to provide in his will a testamentary trust to guarantee, after his death, the $30,000 annual payments to Elizabeth. We believe these facts show petitioner paid, and obligated himself to pay, substantial amounts in excess of $50,000 annually as an inducement to procuring a divorce. Moreover, petitioner testified that in 1926 he believed the amount required to properly support his wife should be $14,000 to $16,000 a year, plus $4,000 a year for the son. Petitioner increased the annual amounts in other offers he made from time to time until she finally agreed to accept the offer embraced in the agreements signed on September 5, 1929. The latter financial arrangement was the culmination of efforts of petitioner from 1926 to that date to reach an agreement with Elizabeth on an amount which she would accept for maintenance and support and obtain a divorce.

The special master in chancery, in his report on the divorce proceedings, stated that certain testimony taken in the case indicated "that the defendant was anxious to get a divorce and insistent upon having it at all costs." The special master also stated in his report to the chancellor that petitioner had made ample provisions for the support and maintenance of his wife and of the child. Those provisions include the obligation of petitioner to pay annually to his former spouse the amount of $30,000. Such amount was so paid in each of the years here involved, and the payments are properly characterized as payments in the nature of or in lieu of alimony. See Internal Revenue Bulletin, C. B. 1942–2, pp. 427, 568. We conclude from the whole record that the payments were made under an obligation of petitioner created by a written instrument executed as an incident to the divorce which his former wife promised to, and did, obtain. It is true that the periodic payments here involved were for the support and maintenance of both petitioner's wife and their minor son. However, as we have found, there was no designation of the part of such periodic payments which was to be payable for the support of the minor child, *Dora H. Moitoret*, 7 T. C. 640; *Robert*

*W. Budd*, 7 T. C. 413; affirmed without opinion, C. C. A., 6th Cir., June 10, 1947. Moreover, prior to the tax years before us, petitioner's son had attained his majority. It follows that the payments in question are deductible by petitioner under section 23 (u) of the Internal Revenue Code.

Because of petitioner's claim of overpayment,

*Decision will be entered under Rule 50.*

Reviewed by the Court.