COX v. COMMISSIONER OF INTERNAL REVENUE.

No. 9807.

United States Court of Appeals Third Circuit.

Argued Feb. 10, 1949.

Decided July 20, 1949.

John A. McCann, Pittsburgh, Pa. (Harold E. McCamey, Dickie, Robinson & McCamey, Pittsburgh, Pa., on the brief), for petitioner.

Louise Foster, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, Special Assistants to the Attorney General, on the brief), for respondent.

Randolph E. Paul, Washington, D. C., Carolyn E. Agger, Washington, D.C., on the brief, for Maurice W. Newton, as amicus curiae.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The sole issue in this case is whether payments made by the petitioner to his former wife pursuant to an agreement executed by them after their divorce was decreed were " * * * in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband * * * under a written instrument incident to such divorce or separation * * *." Section 22(k), Internal Revenue Code.[1] The Tax Court, three judges dissenting, answered the question in the negative and, accordingly, the payments made by the petitioner in the taxable year, 1944, were held not deductible by him under Section 23(u) of the Code.[2] 10 T.C. 955.

The facts are not in dispute. The petitioner was living in New Jersey when he separated from his wife on December 26, 1941. Thereafter he lived in New York until May 2, 1943, when he went to Florida. About July, 1943, the petitioner and his wife each employed attorneys who corresponded about divorce and financial arrangements. The petitioner was paying to his wife about $400 a month, retaining for himself from $60 to $100 a month and his government allowance. On October 25,

1943, the petitioner secured a divorce in Okaloosa County, Florida.[3] On November 15, 1943, giving his residence in Florida and a New York address, he applied for and obtained a license to marry, and he was married in New York on November 21, 1943.

On June 29, 1944, the petitioner and his divorced wife, Nancy Campbell Cox, executed the written instrument here in question. The agreement recited that the parties were married April 4, 1920, but were living apart and would continue to do so, and declared that they desired to reach a satisfactory agreement as to property, custody of minor children and support and maintenance of Nancy Campbell Cox. It then provided, inter alia, for the transfer by the petitioner to his former wife of certain real and personal property and for the payment by petitioner of one-half his gross income to her until she should remarry, in which event they would reach a new agreement respecting the minor children. Further, Nancy Campbell Cox agreed that, so long as the petitioner continued to perform the agreement, she would not contest or bring any action in any court to set aside, nullify, or question "the purported decree of divorce heretofore allegedly secured in

[1] 26 U.S.C.A. § 22(k), as amended by Section 120(a) of the Revenue Act of 1942, 56 Stat. 816, reads in pertinent part as follows: "(k) Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *"

[2] 26 U.S.C.A. § 23(u), as amended by Section 120(b) of the Revenue Act of 1942, 56 Stat. 817, reads in pertinent part as follows:

"Section 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

* * * * * *

"(u) Alimony, etc., payments. In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection."

[3] The decree recited that the Court had jurisdiction of the subject matter and the parties. It was granted without personal service on petitioner's wife, and without appearance on her behalf. The Tax Court found that when the petitioner moved to Florida, and at the time he obtained the divorce, his intent was to stay in Florida.

the State of Florida", but that nothing in the agreement should be construed as appearance by her "in the alleged suit in Florida in which said decree was allegedly obtained or as a waiver of any of her rights in reference to said alleged decree except as herein provided."

Upon his federal income tax return for 1944, the petitioner deducted $2,225.15 as "alimony payments to Nancy Campbell Cox, divorced wife", but this was disallowed by the Commissioner. In his letter of protest, January 30, 1945, to the Commissioner, the petitioner stated that he would file his return for 1945 in New York City "as my permanent home address during 1944 was in New York City"; that the divorce of October 25, 1943, was not valid in New York; that he was uncertain as to his marital status; and that in order to have the wife recognize the divorce he made the alimony agreement of June 29, 1944.

The Tax Court determined that the written instrument was not "incident to" the divorce within the meaning of Section 22 (k). In its view, that Section comprehends a situation in which the husband's marital obligation to support his wife is continued either by the divorce decree or a contract in lieu thereof, and that "incident to" the divorce involves an agreement "prior thereto or coincident therewith". Following its prior decision in Dauwalter v. Commissioner, 1947, 9 T.C. 580, the Tax Court held that the statutory phrase "incident to such divorce" relates to the divorce decree. Finally, it pointed out that the divorce terminated, on its face, petitioner's liability for support and found that rather then because of a marital relationship, the "written agreement arose at most because he wished to sustain his divorced status."

The petitioner contends that any agreement which is an integral part of the general plan to dissolve the marriage is incident to the divorce. He asserts that the agreement here involved is such a one and, further, that the decree of divorce, in view of Estin v. Estin, 1948, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412, did not terminate his liability to support Nancy Campbell Cox; hence the obligation of the contract was incurred "because of the marital or family relationship" in recognition of "the general obligation to support".

At precisely what point the Tax Court would draw the line in application of its tenet that the written agreement must be incident to the divorce or separation decree does not clearly appear. See DuBane v. Commissioner, 1948, 10 T.C. 922. But its instant interpretation of the phrase "incident to such divorce" finds some support in Smith v. Commissioner, 2 Cir., 1948, 168 F.2d 446, 447; but cf. Commissioner v. Murray, 2 Cir., 1949, 174 F.2d 816.

The legislative history of Section 22(k) discloses that it was the intention of the Congress to lessen the hardships upon the alimony-paying spouse by shifting the tax burden in order to aid him in meeting his tax, and perhaps other, obligations. H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 46, 71–72 (1942–2 Cum.Bull. 372, 409, 427); S. Rep. No. 1631, 77th Cong., 2d Sess., p. 83 (1942–2 Cum.Bull. 504, 568). And with respect to the particular portion of Section 22(k) here at issue, it was said: "This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree." S.Rep. No. 1631, supra, p. 84 (1942–2 Cum. Bull. 504, 568); H.Rep. No. 2333, supra, p. 72 (1942–2 Cum.Bull. 372, 428). Thus, a more definite content is to be ascribed[4] to "* * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation. * * *" And the decree or written instrument merely reduces to certain and specific detail the "general obligation of support" arising out of the marital

---

[4] Regulation 111, Section 29.22(k)-1(a), provides inter alia, "* * * Section 22(k) applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree. * * *"

relationship. It is to be observed, therefore, that while the Congress sought to apportion on terms the tax burden between the spouses, it had no intention to allow to married couples indiscriminate leeway in the adjustment of their differences in sofar as such differences would have a tax consequence. The door to tax equalization is firmly hinged, in statutory terms, to "* * * the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance * * *."[5] Smith v. Commissioner, supra; Daine v. Commissioner, 2 Cir., 1948, 168 F.2d 449.

Finally, the Congress was aware of the fact, at the time Section 22(k) was under consideration, that tax consequences in this sort of situation followed upon the intervention of local laws, with the happenstance of residency determining the identity of the taxpayer on the alimony-income. Cf. Pearce v. Commissioner, 1942, 315 U.S. 543, 62 S.Ct. 754, 86 L.Ed. 1016; Helvering v. Fitch, 1940, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665; Helvering v. Fuller, 1940, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082. Accordingly, it was an announced purpose of Section 22(k) to "* * * produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the *existence and continuance* of an obligation to pay alimony." (Emphasis supplied.) S.Rep. No. 1631, supra, p. 83 (1942-2 Cum.Bull. 504, 568); H.Rep. No. 2333, supra, p. 72 (1942-2 Cum.Bull. 372, 427).

Thus, it appears that the Congress intended to afford relief from the unfairness of the pre-existing situation to citizens of different states. Whereas, under the prior law, upon the cited cases, a local requirement continuing the obligation to support beyond an absolute divorce placed the tax burden upon the husband, under Section 22(k) the local alimony laws become irrelevant. Cf. Hesse v. Commissioner, 1946, 7 T.C. 700. The purpose of the Section to disregard "* * * the laws of different States concerning the existence and continuance of an obligation to pay alimony * * *" cannot be accorded its full effect were we to heed the petitioner's suggestion that, in the case of an agreement subsequent to the absolute divorce, his tax liability must be viewed in light of the possibility that, despite the divorce, there exists under State law a requirement that he continue to support his former wife.[6]

To effectuate its desire for uniformity, the Congress has provided a new standard for the application of the federal income tax: the general obligation of support must arise out of the marital relationship; where the parties seek to settle their differences by agreement rather than by submission to the court, the agreement must be in recognition of that obligation *and* must be "incident to such divorce". For the purposes of this case, we do not regard it as essential to determine the boundaries of the phrase "incident to such divorce". We think it sufficient to say that Section 22(k) envisages a situation in which the agreement between the husband and wife is part of the package of the divorce. The term "divorce", as we use it here, does not refer to status, but encompasses the breaking-up of the marriage eventuating in its dissolution,[7] and divestment of marital obligations as provided in the decree.

Under the facts of the case at bar, we hold that the written instrument does not come within that standard. The divorce prima facie terminated the petitioner's marital obligations; no agreement was reached until eight months afterward. The

---

[5] The term "wife" may be read "husband", and the term "husband" may be read "wife". Section 3797(a) (17), Internal Revenue Code, as amended, 26 U. S.C.A. § 3797(a) (17).

[6] Estin v. Estin, 1948, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412, does not aid the petitioner. There, the Supreme Court held that a divorce decree could not affect the rights of a spouse in a prior judgment. Here, there was no such prior judgment. In any event, that case does not bear on the question of whether the agreement here was "incident to such divorce".

[7] The Tax Court has held that agreements prior to divorce fall within the statute. Johnson v. Commissioner, 1948, 10 T.C. 647.

lack of agreement did not present an obstacle to the petitioner's securing the divorce, nor to his remarriage. Then, the petitioner was acting, as the Tax Court found, to preserve his divorced status as to his former wife, and his married status as to his second wife. The instrument was therefore independent and anchor-free of the divorce, being related at most to the divorce status. Mere reference to the divorce decree in the instrument does not, under these circumstances, operate in and of itself to bring it within the provisions of Section 22(k).

For the reasons stated, the decision of the Tax Court will be affirmed.