## REBECCA CUMMINS vs. GEORGE CUMMINS.

It is a well settled rule of this court that in questions of divorce guilt cannot be established by the unsupported testimony of either of the parties.

Although delay in bringing a suit for divorce, after the discovery of the commission of the offence which is the ground of the divorce, of itself constitutes no bar, yet it is a circumstance always open to observation, and may, and in many cases ought to determine the court against granting relief.

There is, however, a difference in the application of the principle as against the husband or the wife, as against the latter the delay will rarely furnish evidence of condonation or connivance.

It is in accordance with the soundest principles of public policy and of morality that a wife, while living in a state of separation from her husband in silent submission to her wrongs, shall not be debarred by any lapse of time from the protection to which she might otherwise be entitled whenever the husband shall disturb her peace by an attempted exercise of his marital rights.

---

*J. M. Robeson,* for complainant.

*J. Wilson,* for defendant.

THE CHANCELLOR. The complainant seeks a divorce upon the ground of adultery committed by her husband. The defendant, by his answer, denies the allegations of the bill, and also sets up the adultery of the wife as a bar to the suit. The parties were married in 1826. They lived together until March, 1854, when they separated, the wife having previously withdrawn herself from all cohabitation with the husband. This fact is established by the evidence of both parties. Since the separation the parties have continued to live separate and apart from each other, the wife remaining upon the farm which was given to her by her father, and the husband residing in the immediate neighborhood with the woman with whom he is charged to have committed adultery previous to the separation of the parties.

The charge of adultery against the husband is satisfactorily established by the evidence. The charge is sustained not only by direct proof of the commission of the offence, and by the husband's admission of his guilt, but by a chain of circumstances which in themselves afford satisfactory evidence of the truth of the charge, and constitute sufficient ground for a decree.

The only question in the case arises upon the recriminatory charge made by the defendant's answer against the wife in bar of her suit.

The answer alleges that the wife committed adultery with divers persons unknown to the defendant on different days, through a course of years, extending from 1853 to 1860 inclusive. There is no evidence whatever tending to criminate the wife after the parties separated in March, 1854. The evidence is confined to two acts of adultery alleged to have been committed, the one in the summer, the other in the fall or winter previous to the separation. The proof of the first charge rests upon the direct testimony of a single witness

whose character for truth and veracity is seriously impeached. The circumstances relied on by way of corroboration are of the lightest character, and are susceptible of a natural interpretation entirely consistent with the complainant's innocence.

The second charge is proved by the direct testimony of the husband, and is attempted to be corroborated by the testimony of the same witness who was relied upon to support the first charge, and whose character for truth and veracity, as well as that of the husband himself, is impeached. But admitting the testimony of both the witnesses to be unimpeached, the charge of the answer is not satisfactorily established.

The direct testimony of the husband is, that on the night when the offence is alleged to have been committed he slept in his own room, on the lower floor of the house, with an acquaintance who was spending the night at his house, the wife, as was customary, occupying a room in the upper story with some of her daughters; that after midnight the husband left the house, at the request of his guest, to harness his horse; that returning speedily to the house, he saw through the window, by the light of a fire burning in the room, his wife in the bed which he had just left with his guest. On his entering the house he encountered his wife hastening from the room of his guest, and going to her own room up stairs. The statement of the corroborating witness is, that he heard the husband enter the house, heard the steps of some one coming rapidly up stairs, and heard the husband loudly accusing the wife of her infidelity. The material charge rests solely upon the evidence of the husband. No one but he pretends to have seen the wife out of her own room, much less in the room or bed of the husband's guest, that night but the husband himself. There is no evidence to show any previous intimacy or familiarity between the wife and the person with whom her crime is alleged to have been committed. He is not shown to have visited her at her home, or to have met her elsewhere. On the day in question he came to the house, not to visit the wife, but was brought there by the husband. He was a boon companion of the

husband. They were both men of intemperate habits. So far as appears they spent the evening together in the husband's room. It is clearly shown that they were drinking until the guest lay upon the floor in a state of gross intoxication, when he was removed from the floor to the bed by the husband, assisted by one of the witnesses. There is no evidence that during the evening the wife either saw or spoke to him. Under such circumstances, that the wife should have left her own apartment, and gone to the room and bed of her husband, then occupied by his intoxicated companion, in the temporary absence of the husband, where she was exposed to observation, is sufficiently improbable. But the further statement of the husband, that after the discovery of his wife's infidelity, he spent some time in conversation with his guest, whom he had just detected in the act of criminal intercourse with his wife, accompanied him to the stable, assisted him in harnessing his horse, and parted with him, so far as appears, with cordiality and without an allusion to the transaction of which he now complains, renders the whole narrative in the highest degree unnatural and improbable.

There is another fact which goes far to discredit the narrative of the husband. In his answer to the complainant's bill he sets up, as he was bound to do, the wife's infidelity in bar of her action. If he then knew when, where, and with whom his wife had committed adultery he was bound to have stated it in his answer. He escapes the well known requirement of the rule of pleading by the general averment that she had committed adultery on different days with divers persons *unknown to the defendant.* That statement, though not sworn to, must be presumed to have been made upon information furnished by the defendant himself. Had the fact, as sworn to by the defendant, been communicated to counsel it would have been embodied in the answer. It certainly could not have escaped the recollection of the defendant. All the corroborating circumstances detailed by the other witnesses were fully within his knowledge when the answer was put in.

We have the husband's authority for saying that he entertained suspicions of his wife, and it seems far more reasonable, under the circumstances, to regard the whole scene detailed by the husband as produced by the delirium of intoxication or by the madness of jealousy than to receive it as competent evidence of the guilt of the wife. I have deemed it due to the parties to express my views upon the weight of the evidence inculpating the wife, as it affects not herself alone, but a numerous family of children.

If, however, the evidence of the husband had been much stronger and more satisfactory than it is the decision of the case must have been against the defendant. It is a well settled rule of the court, that in questions of divorce guilt cannot be established by the unsupported testimony of either of the parties.

There is another ground of objection to the divorce which, although not urged upon the argument, is entitled to consideration, viz. the length of time which has elapsed since the commission of the offence complained of. As has been stated, the parties separated in March, 1854. The acts of adultery on which the bill is founded were committed and known to the wife prior to that time. Nine years at least must have elapsed between the time that the wife was apprised of her husband's infidelity and the filing of the bill. We have in this state no statute of limitations applicable to suits for divorce, nor has this court adopted any analogous rule in regard to them. Delay of itself, therefore, constitutes no bar, and yet it is a circumstance always open to observation, and which may, and in many cases ought to determine the court against granting relief. "The first thing," said Lord Stowell, "which the court looks to, when a charge of adultery is preferred, is the date of the charge relatively to the date of the criminal fact charged and known by the party, because if the interval be very long between the date and knowledge of the fact, and the exhibition of them to this court, it will be indisposed to relieve a party who appears to have slumbered in sufficient comfort over them; and it will be inclined to infer·

Cummins v. Cummins.

either an insincerity in the complaint or an acquiescence in the injury, whether real or supposed, or a condonation of it." *Mortimer* v. *Mortimer*, 2 *Hagg. Cons. R.* 310.

In *Williamson* v. *Williamson*, 1 *Johns. Chan. R.* 488, Chancellor Kent refused a divorce after the lapse of twenty years, though the adultery was fully proved and the counsel of both parties requested that the divorce should be granted.

There is, however, in this respect a difference in the application of the principle as against the husband or the wife. As against the latter, the delay will rarely furnish evidence of condonation or connivance. A delay in bringing the suit may moreover be not only excusable but meritorious, in the hope of reconciliation, or from natural aversion to giving publicity to domestic difficulties, or involving children in the reproach of a parent's guilt. *D'Aguilar* v. *D'Aguilar*, 1 *Hagg.* 773; *Ferrers* v. *Ferrers*, 1 *Hagg. Cons. R.* 130.

In *D'Aguilar* v. *D'Aguilar*, Lord Stowell said, "it has never been held that a woman's not coming raises even a *presumption* against the truth of such an occurrence; there may be many reasons against such a course, and here the conduct of this lady is accounted for by the voluntary separation being acquiesced in."

In the case before the court, the voluntary separation of the parties has been acquiesced in by the husband. There is no pretence of condonation or collusion. The case falls clearly within the principle of the adjudicated cases. It is moreover in entire accordance with the soundest principles of public policy and of morality, that a wife, while living in a state of separation from her husband in silent submission to her wrongs, shall not be debarred by any lapse of time from the protection to which she might otherwise be entitled, whenever the husband shall disturb her peace by an attempted exercise of his marital rights.

The complainant is entitled to a decree.