30 N.J. Super. 427 (1954)
104 A.2d 862
ROLF E. GAHN, PLAINTIFF,
v.
MILDRED B. GAHN, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 23, 1954.
*428 Mr. Mervin G. Wiener, attorney for plaintiff.
Mr. Robert Carey, Jr., attorney for defendant.
EWART, J.S.C.
The parties to this suit are husband and wife, having been married November 17, 1923. They cohabited together until on or about May 7, 1938, when the plaintiff husband left home and never returned to live with the defendant. In October 1938 defendant complained against the plaintiff before the Domestic Relations Court at Elizabeth in Union County and as a result of proceedings there had, plaintiff was ordered to pay the defendant $12 per week for her maintenance and support. On March 31, 1941 defendant filed a bill for separate maintenance against the plaintiff in the old Court of Chancery (Docket 135/380), in which suit an order was entered May 20, 1941 directing the defendant (the plaintiff in this suit) to pay his wife $12 per week for her maintenance and support pendente lite, together with a counsel fee of $150 plus costs. That cause was never brought to final hearing. The plaintiff in this suit, defendant in the separate maintenance suit, paid the $12 per week maintenance until his wife, the defendant, was committed to an insane asylum in Delaware in 1948, whereupon it appears he voluntarily increased the payments to $35 a week and continued paying that sum until April of 1952, when he claims to have learned that his wife was possessed of an estate of some $13,000 in her own right, after which he ceased making any further maintenance payments. Plaintiff in the present suit thereupon applied by motion, supported by affidavits, for an order to compel the defendant wife to repay to him monies he had theretofore paid her for her maintenance and the wife countered with an application to have her husband adjudged in contempt for failure to continue payment of the maintenance ordered pendente lite in 1941. Those proceedings resulted in an order entered January *429 5, 1954 denying the husband's application for the order he sought; denying the wife's application to have the defendant husband held in contempt; and dismissing the bill for separate maintenance filed in 1941 with leave to the wife to counterclaim for maintenance in the present divorce suit.
No children were born of the marriage, but the defendant wife has a daughter, Alberta L. Ryan, by a prior marriage, who has been duly appointed guardian ad litem for the defendant in this suit.
February 11, 1953 the husband, plaintiff in the present suit, filed suit for divorce on the ground of constructive desertion based upon the defendant's extreme cruelty beginning immediately after their marriage in 1923 and continuing until May 7, 1938 when he left her. On behalf of the defendant wife, an answer was filed denying the charges set forth in the complaint and pleading as a separate defense laches of the plaintiff. Defendant also counterclaimed charging the plaintiff abandoned her on May 7, 1938 and neglected and refused to support her and demands judgment against the plaintiff for separate maintenance, costs and counsel fees.
This matter came on for hearing at Newark on April 7, 1954. Plaintiff testified in support of the charges in his complaint and called as corroborating witnesses his sister-in-law. Mrs. Ruth Gahn, Theresa R. Naughton, a former employee of his, and Mrs. Ruth Treverrow, a mutual friend of the parties.
It appeared at the hearing that the question of defendant's maintenance in the asylum in Delaware has been satisfactorily provided for by virtue of some agreement in writing entered into between the plaintiff and the hospital authorities. In that posture of affairs, defendant, who was represented by counsel present at the hearing, offered no proofs in support of the answer or in support of the counterclaim nor did defendant's counsel cross-examine the plaintiff's witnesses.
The proofs established and satisfactorily corroborated the essential elements of the complaint, viz., the marriage, the domicile in New Jersey, and the fact that defendant subjected the plaintiff to a course of abuse, humiliation and cruel treatment over a period of years which adversely affected his *430 health to a material degree and justified him in having left her on May 7, 1938.
I find from the proofs that plaintiff is entitled to a divorce on the grounds charged in the complaint, unless it be that his long delay in the institution of this suit has worked an estoppel against him by reason of his laches.
He could have instituted suit in 1940 on the same grounds alleged in the complaint, or could have filed a cross-petition for divorce in the maintenance suit in 1941. Instead of doing so, however, he postponed action until February 11, 1953, a delay of more than 12 years. And in the meantime defendant has become mentally incompetent and has been confined in an asylum since 1948.
While mere lapse of time, without more, does not constitute laches, yet a delay for an unreasonable length of time, not satisfactorily explained, coupled with a change in defendant's position by which the defense is prejudiced, works an estoppel against the plaintiff and makes a plea of laches a good bar in defense of the action. Endicott v. Marvel, 81 N.J. Eq. 378 (Ch. 1913); Burke v. Gunther, 128 N.J. Eq. 565 (Ch. 1941); Lang v. Hexter, 137 N.J. Eq. 100, 104 (Ch. 1945), affirmed 138 N.J. Eq. 478 (E. & A. 1946); Reilly v. Griffith, 141 N.J. Eq. 154 (Ch. 1947), affirmed 142 N.J. Eq. 724 (E. & A. 1948); Riverton Country Club v. Thomas, 141 N.J. Eq. 435 (Ch. 1948), affirmed 1 N.J. 508 (1948).
The doctrine of laches is applicable to suits for divorce and nullity of marriage as well as to equitable causes generally. 11 N.J. Practice (Herr), sec. 783; Annotation, 4 A.L.R.2d 1321-1342, particularly sec. 24; 1 Nelson on Divorce and Annulment (2nd ed.) sec. 9:04.
It has often been said that it is the policy of the law to sustain the marriage relation; that the State is a third party in interest in every divorce suit, and that it is necessary in such suits that the law should be administered in view of public good as well as of private right. Hence, it has been held that to sustain a divorce action, after an unreasonably long delay, the court must be convinced that the delay was *431 occasioned by a valid reason, not inconsistent with good faith, and that the passage of time has not impaired the proofs so as to make the evidence inadequate. Annotation, 4 A.L.R.2d 1342, sec. 24.
Laches has defeated suits for divorce by husbands in a number of reported cases in this State. 11 N.J. Practice, sec. 783, and cases therein cited.
In Cummins v. Cummins, 15 N.J. Eq. 138 (Ch. 1862), the defense of laches was considered in a suit by a wife against her husband on the ground of adultery. There was a delay of nine years in bringing suit and in that case the wife was granted a decree notwithstanding her delay, but the court remarked that the doctrine of laches was applied more strongly against a husband suing for divorce than against a wife.
In Barker v. Barker, 63 N.J. Eq. 593 (Ch. 1902), there was a delay of 25 years after knowledge of the offense in bringing suit for divorce on the ground of adultery. The court held that delay was fatal to the husband's suit.
In Duerner v. Duerner, 142 N.J. Eq. 759 (E. & A. 1948), the husband brought suit for divorce in 1946 upon the ground of adultery committed in 1926. The petition for divorce was dismissed because the guilt of the defendant was known to the petitioner and he offered no adequate explanation for his delay of 20 years in bringing suit. In that case the court, at page 761, made the following pertinent remarks applicable to such situations:
"`It has been well said that in the granting of divorces, the state, as well as the parties, is interested, and that the public is represented by what is called "the conscience of the court," and a judicial investigation of all such cases, particularly when they are ex parte, should be pursued with the utmost vigilance for the purpose of determining the bona fides of the application.' Griffiths v. Griffiths, 69 N.J. Eq. 689. Cited in Henry v. Henry, 79 N.J. Eq. 493; affirmed 81 N.J. Eq. 512; wherein it is also stated that the analogy of ordinary actions cannot be applied.
It follows that the failure of the defendant to set up in her answer the delay in bringing the suit cannot deprive the court of its jurisdiction to dispose of the case on the merits and in the public interest.
*432 On the merits, the Advisory Master found:
`The petitioner has offered no adequate explanation for his failure to sue for a dissolution of the marriage, for more than two decades. He states that he refrained from bringing suit against his wife until his son had grown to manhood, because he did not wish to deprive his child of a home. This excuse is unconvincing because he made no attempt to furnish his son with a home. His effort in this respect was limited to a contribution of $4 a week for the boy's maintenance.'

* * * * * * * *
There is no statute in this State limiting the time within which a suit for divorce may be brought. Although delay in bringing a suit after the discovery of the commission of the offense which is the ground of divorce of itself constitutes no bar, yet it is a circumstances always open to observation and may in many cases ought to determine the court against granting relief, because if the interval be very long between the date of the offense and knowledge of the facts and the bringing of the suit, the court will be inclined to infer either an insincerity in the complaint, an acquiescence in the injury or a condonation of it. Cummins v. Cummins, 15 N.J. Eq. 138; Barker v. Barker, 63 N.J. Eq. 593; Bartow v. Bartow, N.J. Ch., 122 A. 888. A husband cannot wait to make his charges until the years dim the relevant proofs to the contrary. If he is not diligent he must lose his right to relief. Tarbell v. Tarbell, 123 N.J. Eq. 581. The delay must be satisfactorily explained, and the cited cases clearly show that the explanation must be presented as a part of the testimony in support of the petition."
In the case at bar, the plaintiff's explanation of his delay was that at first he was not interested in securing a divorce; that he just wanted to escape from the presence of his wife; that from 1941 to 1945 he was busily engaged in war work, working seven days a week, and didn't have time for any outside activities; that later he concluded that with old age approaching (he is now 67 years of age), he would be better off to have an agreeable companion (female); that in the meantime his wife had been committed to an asylum in 1948 and it was his impression that one could not secure a divorce against an insane person; and that it was not until 1952 that he learned he would have a right to sue for divorce notwithstanding his wife's insanity and her incarceration in an asylum.
I cannot regard these reasons as a satisfactory explanation of the plaintiff having delayed for more than 12 years the *433 institution of this suit, particularly in view of the fact that defendant in the meantime has become mentally deranged; is unable to speak for or defend herself; and any defense she might have had (as indicated by the affidavits filed in the separate maintenance suit in 1941), she is unable to assert at this time. It is significant that plaintiff saw fit to refrain from bringing suit until his wife became mentally incapacitated and unable to defend herself before venturing to institute this suit for divorce.
Under these circumstances, I think it must be said as a matter of public policy that plaintiff's unreasonably long delay in the institution of suit for divorce has not been satisfactorily explained and that he is guilty of laches which must bar him from relief in his present suit.
Judgment will go for defendant on the plaintiff's complaint.